10376

DILLINGHAM *ET AL.* v. NATIONAL COUNCIL, JUNIOR ORDER
OF AMERICAN MECHANICS.

(102 S. E. 721.)

INSURANCE—FRATERNAL ORGANIZATION ESTOPPED BY RECEIPT OF PRE-
MIUMS TO DENY GOOD STANDING OF MEMBER.—Where a local council
of a fraternal benefit organization failed in the performance of its
duty to pay taxes for the support of the State council for five con-
secutive years, and until the failure became habitual, and the State
council knew it and made no complaint about it until December,
1915, and a member of the local council continued to pay his assess-
ments up to his death in February, 1916, with no knowledge of the
default of the local council, the State council for itself and the
National council of the organization were estopped to set up the
breach to defeat an action by the beneficiaries of the deceased mem-
ber to recover benefits; Civ. Code 1912, secs. 2755, 2770, not applying.

Before MOORE, J., York, Summer term, 1918.    Affirmed.

Action by Minnie Dillingham and others against National Council, Junior Order of United American Mechanics. Judgment for plaintiffs, and defendant appeals.

*Messrs. Douglass & Douglass* and *Butler & Hall,* for appellant.    *Messrs. Butler & Hall* submit: *That appellant was not estopped by the acts of Sandifer, the local financial agent, who had collected Dillingham's dues in advance up to a period beyond the date of his death:* Code of Laws, sec. 2770; sec. 2755; 31 Cyc. 229; 102 S. C. 413; 107 S. C. 291; 95 S. C. 61, and 102 S. C. 286, distinguished.    *The deceased, by becoming a member of the order, made his local council his agent to keep up his and its affiliation with the State and National councils, and the National Council is not to blame for the condition of the local council:* 110 S. C. 340.    *The certificate or contract with the deceased expressly provides the condition upon which payment will be made, and the uncontradicted testimony shows that the conditions were not performed:* 206 Fed. 409; 80 S. E. 545; 89 Atl. Rep. 301; 163 S. W. 324; 165 S. W. 454; 148 N. Y. S. 141; 90a, 744; 170 S. W. 937; 154 N. W. 512; 85 S. E. 827; 54 C. C. A. 293; 117 Fed. Rep. 369; 77 S. W. 62; 121 Fed. Rep. 66; 60 S. E. 40; 87 Minn. 417; 63 Mo. App. 277; 79 Conn. 218.

*Mr. J. S. Brice,* for respondent, submits: *That appellant was estopped by the payments made to Sandifer from claiming that the policy was forfeited:* Vol. I of the Code of Laws 1912, sec. 2770; 102 S. C. 387; 172 N. Y. 508.

*Mr. John R. Hart,* also for respondent, submits: *That this case is governed by section 2770 of the Civil Code 1912, vol. I, and not by section 2775.    Appellant is bound by the acts of Sandifer in accepting payments from Dillingham:* 102 S. C. 386; 107 S. C. 225; 95 S. C. 61.    *Cases distinguished:* 107 S. C. 291; 102 S. C. 413.

February 23, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is by the defendant fraternal order from a judgment for the plaintiff entered upon a directed verdict.

The controversy arises out of these circumstances: The fraternal order is made up of three organizations; starting at the top, one called the National Council, whose situs is Pittsburgh, Pa.; one called the State council, whose situs is not revealed; and one called the local council, whose situs is the town of York, in this State.

Dillingham in his lifetime was a member of the local council called No. 48, and from his entrance into the order in March, 1907, until his death on February 8, 1916, he paid to the local council all the dues which he owned to the National Council.

At Dillingham's death the National Council refused to pay the benefit of $500 to his "legal dependents," the wife and infant child. The ground of refusal is that Dillingham's connection with the National Council was broken off, because local council No. 48 had not paid to the State council certain per capita taxes due to the State council by the local council. If the fact of nonpayment be true, the inquiry is, Has such fact, under the other circumstances of the case, operated to defeat the plaintiffs' right? That is the matter to be decided.

The condition of the certificate which was issued to Dillingham and on which the action is based in essential matters is:

"That Dillingham * * * shall be at the time of his death (1) a beneficial member in good standing of a subordinate council of said order, and affiliating with the National Council of said order; (2) and also a member in good standing of the funeral benefit department of said National Council. * * *" The numerals are supplied.

Has Dillingham performed these conditions? That marked (1) is the determinative condition, for that marked (2) depends on that marked (1). The testimony is plain that at the instant of his death Dillingham was in good standing with local council No. 48. The secretary, Sandifer, testified: "Mr. Dillingham was a member in 1910 when I joined, and continued to be a member in regular standing· as long as I was a member"—and Sandifer was a member at Dillingham's death. So much is not denied, but the contention is that the local council, called in the certificate subordinate council, was not affiliated with the National Council, and that because of its failure of duty towards the State council. Such duty is fixed by the laws of the State council thus:

"Each council shall pay to the State council the per· capita tax as enacted by the National Council, together with such additional per capita tax as may be agreed upon for the State council purposes; and any council neglecting or refusing to pay the same in full shall be deprived of the privileges of the order, and be debarred of the right of representation on· the floor of the State council; and section 13 provides that any council failing to forward the quarterly per capita tax by the first day of February, May, August and November of each year shall be marked 'suspended,' and can be reinstated only by paying a fine of $10.00."

The National Council has also a law which declares the legal consequences to a member in the event his local council shall lose membership in the State council, thus:

"Should any council lose its membership with its State council or with the National Council its connection with the funeral benefit department shall thereby cease, and any council which is not in good standing with its State council and with the National Council cannot remain in good standing or be entitled to receive from the funeral benefit department the funeral benefits provided for in these laws."

28—S. C. 113

The National Council has, too, a law which defines what "good standing" means, thus:

Chapter V defines good standing:

"A member of the order shall be in good standing, (a) if in good standing with the council of which he is a member; (b) if his council be in good standing with the State council having jurisdiction thereof; (c) and his council shall be in good standing with the order if in good standing with its State council."

So that the crux of the matter lies in the alleged nonperformance of a duty owing by the local council to the State council, to wit, in the failure to pay to the State council "such additional per capita tax as may be agreed upon for the State council purposes." It nowhere appears in the record how much that per capita tax is, nor does it appear that Dillingham failed to pay it to the local council.

It does appear from Sandifer's testimony that, from his entrance into the order in 1910 up to Dillingham's death, with perhaps one exception, local council No. 48 never remitted to the State council any per capita tax, and that, so far as the witness recollected, the State council "never made any demands or threatened expulsion because we did not pay them," and further "never had any complaint from State council that the dues were not promptly paid." As a consequence of all this, Mr. Sandifer, the secretary of the local council, was first advised by letter dated December 7, 1915, from Collins, the secretary-manager of the National Council, that Collins had been advised by the secretary of the State council that the local council was not in good standing with the State council. The letter did not suggest in what act or omission the lack of good standing consisted. And on February 22, 1916, by letter the National Council refused to pay the benefit, because Dillingham did not die in good standing with the State council, and was, therefore, not in good standing with the National Council. The language of the letter is:

"We notified you on December 7th that your council was not in good standing with your State council, upon information received from your State secretary, Brother J. S. Wilson, and you were also notified at that time unless you placed yourself in good standing with your State council you would not be in good standing here nor could we accept any more assessments from your council."

We revert now, the facts being established, to the inquiry before made upon the hypothesis of their truth, whether they operate to defeat the plaintiff's right. It was admitted at the bar by counsel for the fraternal order that, had Dillingham died on or before December 7, 1915, his certificate would have been intact, and his legal dependents, the plaintiffs, would be entitled to payment. If so much be true, then there is nothing to differentiate the present right of the legal dependents from the right which existed on December 7th. For all that the letter of December 7th undertook to do was to advise the local council of the then bad standing of the local council. If so much was then true, and if such bad standing operated to defeat the right thereafter, then it operated to defeat the right theretofore; for the alleged bad standing had been existent for five years next before December 7th. But we are of the settled opinion that the plaintiff's right was intact on December 7th and is now.

Much has been said in the argument about two apparently conflicting statutes, sections 2755 and 2770 of the Code of Laws. The former is a section of a comprehensive act to "regulate and control fraternal benefit associations," such as the defendant is; and the section in question very properly declares that the subordinate lodges of a supreme governing association shall not have the power to waive the laws of the latter. See section 7 of the act (26 St. at Large, 555). Section 2770 is an independent statute, enacted the same day as the statute just referred to; and it properly declares that when members of orders like the defendant

come to make their initial payment of dues to a person designated by the laws of the order to receive them, in such a case the recipient of the dues shall be deemed the agent of the general order.   Both of these statutes are but declaratory of well established principles of law, and the legislature need hardly to have enacted them.   But the facts of the instant case do not fetch it within the words of either of the statutes.   With reference to the last discussed statute there is no denial that Sandifer was the agent of the National Order to receive dues, so that the statute is out of view. With reference to the first discussed statute there is no testimony tending to show that either the local council or the State council intended to waive the operation of any law of the National Order.

The law which the defendant has invoked to defeat the plaintiff's right is one of the State council before quoted. The duty, therefore, which Dillingham's local council failed to perform was owing to the State council, and consisted in a failure to remit to the State council for its maintenance a per capita tax for the members of the local council.   So, the case comes to this: The local council failed in the performance of its duty to the State council for five consecutive years, and until the failure became habitual; and the State council knew it, and made no complaint about it until December, 1915; and Dillingham continued to pay his assessments up to his death in February, 1916, with no knowledge of the default of the local council.   Upon that state of facts the State council for itself and the National Council through the State council are plainly estopped to set up the breach of law of the State council to defeat the plaintiff's action.

We have not deemed it to be helpful to discuss allied causes cited by counsel, and running from 95 S. C. to 110 S. C. Reports.

The facts of the instant case are not analogous to any of them, except *Fox v. Junior Order,* 110 S. C. 337, 96 S. E.

542, L. R. A. 1918f, 778.    But in that case Fox was confessedly out, and was trying to get back; in the instant case Dillingham is (ideally) in, and the order is trying to put him out.

The judgment is affirmed.