## 10672

RYAN v. NEW ENGLAND MUTUAL LIFE INSURANCE CO

(108 S. E. 182)

Insurance—Whether Insurer, in Accepting Usual Premium and Failing to Reply to Insured's Letter Stating His Understanding of Policy Terms, Waived Payment of Extra War Premium Held for Jury.—Under a life insurance policy limiting the insurer's liability, unless the insured, if he engaged in military service in time of war, paid an extra premium within 31 days, where insured more than 31 days after entering an officer's training school, wrote to the company's agent, informing him of such fact and asking whether, if he died in the service, his beneficiary could collect, to which the agent replied that she could, but that, when he received his commission, he must pay the extra premium, whereupon insured wrote, enclosing a check for the regular premium, and stating he understood from the agent's letter that until he went abroad there was no extra premium, and the agent accepted the premium and made no reply, such letter was admissible, the evidence showing it had been received, and the contents, if correctly stated by plaintiff, tending to show waiver, which was for the jury.

Before Mendel L. Smith, Special Judge, Sumter, Spring term 1920. Affirmed.

Action by Loretta M. Ryan against New England Mutual Life Insurance Co. Judgment for plaintiff and defendant appeals.

The exceptions directed to be reported were as follows:

1. That his Honor erred in admitting in evidence the copy of the letter of J. B. Ryan, Jr., to R. J. Guinn, dated June 30, 1918, and in submitting the said letter to the jury to be considered by them on the question of waiver by the defendant of the conditions in the policy providing that upon the assured entering the military or naval service in time of war that the liability of the company in the event of the death of the insured while so engaged or within six months thereafter should be limited to the amount of the premiums paid. The error being:

(a) That the said Robt. J. Guinn and Miss Hanft, the only persons who could have received said letter, both testified that no such letter was received by them, that they did not know of its existence, and therefore the presumption that might otherwise arise that the letter was received by reason of the testimony of the plaintiff of its mailing was completely rebutted, and there was no direct evidence or other circumstances showing that the letter had been received.

(b) That the said letter was a self-serving declaration and there being no evidence that the defendant or any agent thereof received the letter or had knowledge of its existence, or acted upon it in any way, that the said letter was incompetent and should not have been admitted in evidence or submitted to the jury on the issue of waiver.

(c) That his Honor should have struck the letter out of the record on motion of the defendant at the end of the defendant's testimony, as the letter was admitted in evidence by reason of the presumption of the receipt of a letter which had been duly mailed and for the purpose of showing a waiver on the part of the defendant of the condi-

tions contained in the applications and policy of insurance and was an effort by the plaintiff to prove that the defendant waived the conditions of the policy on the presumption of the receipt of a letter which actually was not received.

2. That his Honor erred in ruling out a portion of the testimony of Miss Hanft as appears on page 4, of the Case, the error being that this testimony was competent as showing the custom of the defendant upon receiving notice that an assured had entered the military service.

3. That his Honor erred in not directing a verdict in favor of the defendant on the first ground set out in the motion, the error being that the original application and the supplemental application and the conditions of the policy provided that if the assured within five years from the date of the policy shall engage in any military or naval service in time of war the liability of the company in the event of the death of the assured, or within six months thereafter, will be limited to the return of the premiums paid thereon, unless before engaging in such service or within thirty-one days thereafter the insured shall pay to the company at its home office in Boston, Mass., such extra premium as may be required by the company. The error being that this was a reasonable and valid condition and the contract between the parties, and it having appeared conclusively that the assured did enter the military service of the government and did not receive permission from the company, and that the assured failed to pay the additional premium of $37.50 per thousand of insurance as required by the company, and the assured having died in the military service that the beneficiary was not entitled to recover beyond the amount of the premiums actually paid.

4. That his Honor erred in not directing a verdict for the defendant on the second ground set out in the motion, the error being that the company having tendered to the beneficiary a check for the premiums paid on the policy,

that this was all that the beneficiary was entitled to under the terms of the policy and the application signed by the assured.

5. That his Honor erred in not directing a verdict for the defendant under the third and fourth and fifth grounds of the motion, the error being that under the terms of the policy the beneficiary was only entitled to recover the amount of the premiums paid, to wit: $163.00, as there was offered in evidence a letter from the general agent of the defendant company to the assured advising him that the additional premium would amount to $37.50 per thousand of insurance, which must be paid as soon as he entered the military service of the government, otherwise the company's liability would be limited to the return of the premiums in case he should die while in active service or within six months thereafter.

6. That his Honor erred in submitting to the jury the question of waiver on the part of the defendant of the payment of the additional premiums for war service, there being no competent evidence on the part of the plaintiff that the defendant waived the said condition, but on the contrary the testimony all shows that the company insisted upon the performance of the conditions and the payment of the extra war premium.

7. That his Honor erred in charging the jury on the question of waiver and submitting to the jury the question of waiver on the part of the defendant of the payment of the additional premium under what is commonly known as the "War Clause," there being no competent evidence showing any act of waiver on the part of of the defendant or any agent of the defendant, and on the contrary the evidence is conclusive that the defendant insisted upon the additional premium being paid and so notified the assured in writing.

8. That his Honor erred, it is respectfully submitted, in not granting the motion of the defendant for a new

trial, as the verdict of the jury was contrary to the evidence and his Honor's charge in that the jury having found the full amount for the plaintiff, and the presiding Judge having charged the jury that the terms and conditions of the policy were valid, that the jury necessarily based their verdict upon a waiver by the defendant of the terms and conditions of the policy, and there being no evidence of any waiver by the defendant, that the verdict should have been set aside and a new trial ordered.

9. That his Honor should have granted a new trial on motion of the defendant on the ground that the only way the jury could find for the plaintiff was on the ground of waiver, and the only evidence of waiver was the introduction of the copy of an alleged letter claiming to have been sent the agent of the defendant, which was never received, and this was not sufficient evidence upon which the jury could base a verdict for the plaintiff.

*Messrs. Lee & Moise* and *Buist & Buist,* for appellant. *Messrs. Lee & Moise* cite: · *War clause in policy is valid and binding on assured*: 218 S. W., 958; 186 Pac., 1069, (Wash.). *Waiver*: 84 S. C., 95; 40 Cyc., 259.

*Mr. J. H. Clifton,* for respondent.    Oral argument.

June 30, 1921.

The opinion of the Court was delivered by MR. CHIEF· JUSTICE GARY.

This is an action on a policy of life insurance, issued by the defendant, to Jno. B. Ryan, Jr., on the 26th of July, 1917, in the sum of $2,500, wherein his wife, the plaintiff, was named as the beneficiary.

The application of Jno. B. Ryan, Jr., for the insurance, contained these words:

"I further agree that said policy shall be void, if within five years from its date I engage in military or naval service in time of war, without the written consent of the company previously obtained."

The supplemental application contains this provision:

"If within five years from the date of this policy the insured shall engage in any military or naval service in time of war, the liability of the company in event of the death of the insured while so engaged, or within six months thereafter, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon; unless before engaging in such service or within thirty-one days thereafter, or at the time of paying the first premium due hereon, if the insured shall be then so engaged, the insured shall pay to the company at its home office in Boston, Mass., such extra premium as may be required by the company, and in like manner shall pay annually thereafter on each anniversary of this policy or within thirty-one days thereafter, while the insured shall continue to be so engaged, such extra premium as may be required by the company."

The policy thus provides:

"This clause is by mutual agreement attached to said policy prior to its delivery, and is hereby expressly incorporated therein."

The plaintiff introduced in evidence the following letter:

"Greenville, S. C., Box 807, June 23, 1918.

"Mr. Robert J. Guinn, Atlanta, Ga.—Dear Sir: On May 15, 1918, I entered the service of the United States by becoming a member of the Fourth Officers' Training School at Camp Sevier. Will you advise me by return mail what effect this will have on my policy No. 337355, which was issued in July, 1917.

"If I am killed or die in the service, whether while in this country or abroad, can my beneficiary collect this policy?

"Awaiting your reply before paying the premuim due on July 26, 1918, I remain,

"Yours very truly,

"J. B. RYAN, JR.

"Box 807, Greenville, S. C."

Also the following:

"Atlanta, Ga., June 25, 1918.

"Mr. John B. Ryan, Jr., Box 807, Greenville, S. C.— Dear Sir: Re: Policy No. 337355. We have your favor of the 23d and note that on May 15th you became a member of the Officers' Training School, and making inquiry concerning your policy. In reply beg to advise that in the event of your policy becoming a claim while you are in service, at home or abroad, the same is payable to your wife. But you will please be advised that when you receive your commission you will have to pay the extra war preimum, which is $37.50 per thousand per year.

"Trusting this is the information desired, we are

"Yours truly,

R. J. GUINN,

General Agent. H."

Also the following letter:

"June 30, 1918, Greenville, S. C., Box 807.

"Mr. R. J. Guinn, Atlanta, Ga. Care of New England Mutual Life Insurance Co. Dear Sir: Replying to yours of June 25th, I am inclosing herewith check for $81.50 for premium on my policy No. 337355. Also am inclosing order for my share of surplus profit to become $26.00 paid-up insurance.

"I understand from yours of the 25th, that until I go abroad there is no extra war premium due on my policy.

"Yours very truly,

"J. B. RYAN, JR.

"Please send receipt to Box 807, Greenville, S. C."

John B. Ryan, Jr., was commissioned a second lieutenant of infantry on the 25th of August, 1918, and died on the 4th of October, 1918.

The following statement appears in the record:

Letter from Jno. B. Ryan, Jr., to R. J. Guinn, dated June 30, 1918, offered in evidence. The defendant's attorney objects to the introduction of the letter, there being no proof that it was ever mailed or received by Mr. Guinn, and that a waiver of a condition in a policy of insurance could not be established by an alleged letter claimed to have been written and mailed without proof that the same was received by the company or some officer or agent of the company.

The plaintiff testifies on cross-examination by defendant's attorney, and also on direct examination by plaintiff's attorney, that she wrote the letter in question, mailed it at the main postoffice in Greenville, S. C., duly stamped and addressed to Mr. Robert J. Guinn, at Atlanta, Ga. "I knew the address of Mr. Guinn, and had received letters from him." Over defendant's attorney's objection letter introduced in evidence and marked Exhibit D. "In this letter that my husband dictated to me, in which it says, 'Check inclosed for $81.50,' the check was put in that letter, in the letter of June 30, 1918. We left Camp Sevier about July. I don't remember the exact date, and went to Camp Gordon at Atlanta, and was called back to Camp Wadsworth. While in camp I kept copies of the letters. I had a book with carbon copies, and I wrote them and made the carbon copies. I had no typewriter."

R. J. Guinn thus testified in behalf of the defendant:

"The premium due in July, 1918, was paid to me by check. I had no original letter inclosing the check. There was no such letter as I remember. Usually no letter accompanied the check. I am positive that no letter came with this remittance. If any letter did come, I am positive no notice was sent with the premium that Mr.

Ryan was in the service. I am positive that no letter came other than this: 'Enclosed find check for premium.' Most of them just send check with no letter. * * * I attend to all the correspondence out of the ordinary; all letters from the policy holders that required an answer were answered by me personally, or I would give direction as to how to answer the same. * * * I have made search of all letters in our files and all copies of letters, and have not found the original letter from John B. Ryan, Jr., alleged to have been written on June 30, 1918."

Upon the close of the defendant's testimony the defendant moved to strike the letter from the record, on the ground that it had been admitted in evidence by reason of the presumption that the letter having been mailed according to the plaintiff's testimony, it was presumed to have been received, but that the defendant's testimony having conclusively shown that the letter had not been received, the presumption had been rebutted. His Honor refused to strike the letter from the record.

At the close of all the testimony the defendant's attorneys made a motion for the direction of a verdict, which was refused. The jury rendered a verdict in favor of the plaintiff for the amount claimed, and the defendant appealed upon exceptions, which will be reported.

The appellant's attorneys did not argue the exceptions separately, nor do we deem it necessary to consider them in detail.

There is no question that the letter which Jno. B. Ryan, Jr., mailed to the defendant, inclosing the check for $81.50, in payment of the second premium, due on his policy of insurance, was delivered to the defendant. But the issue was whether the contents of the letter were correctly stated in the plaintiff's testimony. If so, they tended to show waiver on the part of the defendant, and the case was properly submitted to the jury.

Affirmed.

JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN (dissenting): The facts of this case are very clearly stated in the opinion of the Chief Justice.

In reference to the motion by the defendant to strike from the record the alleged letter from Ryan to Guinn, general agent of the defendant, dated June 30, 1918, the motion was properly refused. Mrs. Ryan testified that she personally mailed the original letter, of which that offered in evidence purported to be a copy, in the postoffice at Greenville, postage paid, containing check for $81.50. The presumption would arise that it was delivered in due course, and coupled with the fact that the check was received and cashed, the burden of disproving receipt was upon the defendant. This raised an issue of fact which was properly submitted to the jury.

It was also a question of fact for their determination whether or not the purported copy truly represented the contents of the original letter. For the purpose of this appeal from the order refusing to direct a verdict for the defendant, I will assume that the letter of June 30th was received by the defendant, and that the copy in evidence is a correct one.

The question for determination is whether or not the conduct of the general agent in reference to this letter constituted such evidence of waiver or estoppel as required the submission of that issue to the jury.

To restate the facts bearing immediately upon this issue: The policy was issued July 26, 1917, and the initial premium of $81.50 was paid at that time. On May 15, 1918, the insured entered an officers' training school, I assume not having enlisted at that time, but in fact entering the military. On June 23, 1918, he wrote the general agent,

notifying him of that fact and submitting to him this question. The answer to which he desired before paying the second premium:

"If I am killed or die in the service whether while in this country or abroad, can my beneficiary collect this policy?" —to which letter the general agent replied, June 25, 1918:

"In the event of your policy becoming a claim while you are in service, at home or abroad, the same is payable to your wife. But you will please be advised that when you receive your commission you will have to  pay  the extra war premium, which is $37.50 per thousand per year."

Then comes the questioned letter, dated June 30, 1918, from the insured to the the general agent, acknowledging his letter of the 25th and inclosing check for $81.50 and closing with this statement:

"I understand from yours of 25th that until I go abroad there is no extra war premium due on my policy."

This letter, if received, does not appear to have been answered. The defendant cashed the check, applying it to the second ordinary premium due July 26, 1918. The insured was commissioned as second lieutenant in August, was transferred to Camp Gordon, and thence to Camp Wadsworth, where he died in the service on October 4th. No payment of the war premium was made by him, and no notice given to the defendant of his having been commissioned; the only notice given being June 23, 1918, of his having entered the officers' training school at Camp Sevier on May 15, 1918.

The condition quoted in the leading opinion from the application, providing for an annulment of the policy, is broader than the conditions set forth in the rider to the policy, which contains the war clause. The latter must control the former, and the former goes out of the case, particularly as it was shown that the letter of June 25th amounts to a waiver of the written permission required by the former.

The leading opinion declares that the contents of the letter of June 30, 1918, tended to show a waiver by the defendant of the requirement in question. It is an inadvertence, of course, to say that the contents of the letter could possibly have this effect; that letter simply contained a statement by the insured of his understanding of the conditions of the policy; what he thought could not bind the company. What was intended, I assume, is that the acceptance of the premium, accompanied as the remittance was with a statement of the insured's apprehension of the contract, unanswered and uncorrected, was evidence of such waiver. That is practically the sole issue in this appeal.

It will be noted that the insured was informed of the condition in the policy, and on June 23rd, after he had entered the training school, but before he was enlisted or commissioned, anticipating that he would be commissioned, he made inquiry of the company as to the effect his entering the training school would have on his policy, and, further as to the effect of his dying in the service, in this country or abroad, information which he stated he needed "before paying the premium due on July 26, 1918." The general agent of the company promptly, two days later, on June 25th, replied in as plain language as could possibly be employed:

"When you receive your commission you will have to pay the extra war premium, which is $37.50 per thousand per year."

Following this letter, and specifically in reply to it, the insured, on June 30th, still prior to the date of his commission August 26th, and notwithstanding the plain terms of the policy and the plainer terms of the general agent's letter of June 25th, expresses his construction of the policy and the letter to be that no extra war premium was due upon his policy until he went abroad. This misconstruction does not appear to have been corrected by the general agent,

and the contention of the plaintiff is that this conduct on his part was sufficient evidence of waiver to carry the case to the jury.

I adhere to the opinion expressed by me in the case of *Watson v. W. O. W.,* 116 S. C. 361, 108 S. E. 145, recently filed, that the facts here do not present a case of forfeiture, and that therefore waiver has no application. My views stated therein need not be repeated here. Particular attention however, is called to the quotation from the Arkansas case of *Miller v. Ass'n.,* 138 Ark., 442; 212 S. W., 310; 7 A. L. R., 378. See, also, *Reid v. Assur. Co.,* 204 Mo. App., 643; 218 S. W., 957.

The real question is whether or not the failure of the general agent to correct the misapprehension of the wife of the insured expressed in the letter of June 30, purporting to have been signed by the insured, was such evidence of estoppel (not waiver) as justified or required the submission of that issue to the jury. In other words, it involved the application of the principle of estoppel by silence.

In the first place, it is by no means certain that, if the general agent had replied to that letter, stating to the insured that he was mistaken, that the policy in his possession plainly showed that the war assessment had to be paid within 31 days after his enlistment, that his letter of but five days before also plainly called his attention to this requirement, the insured would have paid the war assessment. It is entirely problematical; there is absolutely no evidence that he would. It is just as reasonable to suppose that he would, in order to have the war assessment, have kept the policy alive as to all contingencies except that not assumed by the company, suspended for the time being, to resume its normal state, as a bough when the restraining force is released.

But assume that he would have paid the assessment if his error had been corrected: The well-established princi-

ples of estoppel by silence demonstrates conclusively to my mind that they cannot avail the plaintiff under the admitted facts here. "To make the silence of a party operate as an estoppel, the circumstances must have been such as to render it his duty to speak." 16 Cyc., 759. What made it the duty of the general agent to correct so inexcusable an error? There was the policy; there was the letter of June 30th; nothing could have been plainer. "They would not hear Moses and the prophets;" a third impressment offered no hope that he would be convinced. "It is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth." Id. "It must appear that it was his duty to speak, and that his silence or passive conduct actually misled the other to his prejudice." Id., 761. There is nothing to show that if the error had been corrected the insured would have complied, and that he was therefore "actually misled." *McCormac v. Evans,* 107 S. C., 43; 92 S. E., 19.

"One is not estopped by silence when both parties know or have equal means of knowing the truth." 21 C. J., 1152, citing *Wingert v. Snouffer & Ford,* 134 Iowa, 97; 108 N. W., 1035; 111 N. W., 432; *Spahr v. Cape,* 143 Mo. App., 114; 122 S. W., 379; *Garvey v. Harbison-Walker Refractories Co.,* 213 Pa., 177; 62 Atl., 778. The insured had not only the policy, but the letter of June 25th, and his first letter of the 23rd, shows that his attention had been called to the subject. "The party relying thereon must not have had the means of knowing the true state of facts." 10 R. C. L., 684. The party claiming an estoppel has no right to shut his eyes to a condition that he not only has full opportunity of learning, but which is actually and pointedly called to his notice. Estoppel by silence is classed as a species of implied misrepresentation, a species of fraud. How can this implication stand in the light of the express provisions of the policy and the letter of June

25th?    "Estoppel by silence can only arise when the silence would amount to a fraud, actual or constructive." 21 C. J., 1152.    Is there the faintest suggestion of such a thing in the conduct of the general agent?    As is held in *Scaife v. Thomson*, 15 S. C., 363:

"There is not the slightest evidence warranting the belief that their silence or nonaction was induced by an intention to deceive."

From these conclusions, it is my opinion, it follows that the Circuit Judge was in error in not directing a verdict for the plaintiff for the amount of the premiums paid, as requested by the defendant.

I think that he was in error also in excluding the testimony of Miss Hanft, the stenographer, to the effect that if the letter of June 30th had been received she would have corrected the apparent misapprehension of the insured. Ordinary testimony of what a witness would have done under certain assumed circumstances is too speculative and uncertain to have any great probative force, although such testimony in the matter of the delivery of a telegram has frequently been received.    *Wallingford v. Tel. Co.*, 53 S. C., 410; 31 S. E., 275.    But in a case of this nature, where the plaintiff relies upon estoppel by silence, so much a matter of intention, good faith, the absence of fraud, or a purpose to deceive, the testimony should have been received as throwing light upon the essential feature.