10673.

WATSON v. SOVEREIGN CAMP. W. O. W.

(108 S. E. 145)

1.  Insurance—Draftee is "Enlisted Man" Within Terms of Policy.
    —A draftee is an "enlisted man," within the purview of a life policy which allowed the insured to join the army, but required notice and payment of extra premium.

2.  Insurance—Whether Insurer Waived Extra Premium Held for the Jury.—In an action on a life policy which allowed the insured to join the army and go out of the United States, but required an extra premium, the question whether the insurer, which was operating as a fraternal order, waived the extra premium *held* for jury, even though the officers of the local branch of the order could not waive anything, it not appearing that the general authorities of the order directed the local clerk, whose duty it was to collect all the funds, to collect the war risk premium.

Note: On validity, construction and effect of provisions in life or accident policy in relation to military service, see notes in 4 A. L. R. 848; 7 A. L. R. 382.

Before MEMMINGER, J., Greenwood, September, 1919. Reversed.

Action by Mrs. Mackie Watson against Sovereign Camp Woodmen of the World on a policy of insurance. From a directed verdict for plaintiff for the amount which defendant claimed to be due, the plaintiff appeals.

The defendant's motion for the direction of a verdict was upon the following grounds:

1. That under the contract, the liability of the defendant Sovereign Camp, Woodmen of the World, is only for such proportion on the face of the certificate or the amount thereof, as the period he lived since becoming a member of the order bears to his expectancy of life at the time of becoming a member.

2. That the undisputed testimony shows that under the contract in evidence the only amount that could be recovered is the amount ascertained to be due upon a correct communism of the contract.

3. The undisputed testimony shows that there is no evidence tending to show that any provision of the certificate issued to the deceased or the Constitution and Laws of the order have ever been waived by the Sovereign Camp or any duly authorized agents.

4. The defendant does not claim forfeiture. Therefore, waiver does not arise in the case.

5. The undisputed testimony shows that the deceased did not exercise his option as contained in the certificate, that is, to notify the Sovereign Clerk within thirty days after entering the service of the United States and to pay $37.50 in addition to his regular assessments, camp dues, and general assessments.

*Messrs. Grier, Park & Nicholson,* for appellant, cite: *No waiver by subordinate body:* 1 Civ. Code, 1912, Sec. 2755. *Collector of dues is agent for Sovereign body:* Id.,

Sec. 2770.   *And representations by him in connection with dues and assessments are binding on the Sovereign Camp*: 102 S. C., 86.   *Clause as to "drafted men" should be construed against Camp*:   14 R. C. L., 926; 170 U. S., 133; 95 U. S., 673; 24 L. Ed., 565.   *Meaning of "Enlist*:"   16 U. S. Ct. Cl., 202, 213; 40 Conn., 283; 10 Pa., 357; 90 Mass., (8 Allen.) 480; 28 Fed. Cas., 101; 43 Vt., 617; 137 U. S., 157; 34 L. Ed., 644; 30 Conn., 438.   *Service of draft men involuntary*:   U. S. Comp. St., Sec. 2044-a, 2044-b.

*Messrs. Dial & Todd,* for respondent, cite:   Sec. 2755; 1 Civ. Code, 1912, *construed*:   95 S. C., 61; 102 S. C., 386; 102 S. C., 413; 107 S. C., 226; 107 S. C., 291; 113 S. C., 430; 207 S. W., 310.   *Burden on plaintiff to prove waiver*: 43 S. C., 26; 107 S. C., 299; 108 S. C., 136.   *Acceptance of premiums by local agent with knowledge of violation of terms of policy not a waiver*: 212 S. W., 310; 96 S. W., 365; 16 L. R. A., (N. S.) 1180; 9 Ann. Cas., 373; 138 S W., 1008; 164 S. W., 296.   *Local agent was without authority as to extra war assessment*:   159 S. W., 1113.   *No waiver here*:   113 S. C., 430; 48 N. Y. Supp., 9; 79 Me., 572; 72 S. W., 881; 8 Words & Ph , 7375.   *Extra assessment for war service*:   212 S. W., 310; 4 Joyce Ins., Sec. 2237; 3 Cooley Br. on Ins., 227.   *In construing contract intention of parties, and risks in, mind should control*: 2 Ell. Conts., p. 783, note 35; 95 U. S., 23.   *"Enlisted men*:"   107 Mass., 282; 2 Elliott Cont., Sec. 1511, note 36; 48 N. H., 280.

June 30, 1921

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Samuel C. Watson took out a policy of life insurance with the respondent.   The policy was payable to the appellant, his wife.   The insured was drafted as a soldier, was sent to France, and died there.   The policy permitted the insured to join the army and go outside of the United

States, but it required notice to the company, and the payment of an extra premium. After the deceased left, his wife went to the clerk of the local Camp and talked to him about the payment of her husband's dues. Mrs. Watson was short of money, as the payments had not come from the government. Her purpose was to allow the policy to lapse by not paying the premiums. She was urged by the local clerk to keep up the payments. She consented to pay them, but had to borrow the money to do so. The defendant refused to pay the face of the policy, but tendered the sum of $28.80, which it claimed was due under the terms of the policy. The payment of the full amount was refused, because the extra premium for an enlisted man had not been paid. The plaintiff claimed that her husband was not an enlisted man, but was a drafted man, and that the company had waived the payment of the extra premium. The presiding Judge ordered a verdict for the defendant. From the judgment entered upon that verdict this appeal is taken.

1    The first point cannot be sustained. The deceased was an enlisted man, under the terms of the policy. See *McQueen v. Sovereign Camp, W. O. W.*, 115 S. C. 412; 106 S. E., 32, filed herewith.

2    The second point must be sustained. There was evidence of waiver and the case should have been sent to the jury under the case of *Crumley v. Sovereign Camp W. O. W.*, 102 S. C., 386; 86 S. E., 954. It is true that the officers of the local camp cannot waive anything, but this clerk was also the agent of the Sovereign Camp, and his duty was to "remit all funds due and belonging to the Sovereign Camp to the Sovereign Clerk, as by law provided." It is also true that this extra war risk premium was to be paid to the Sovereign Clerk at the home office. The respondent says it was to be paid directly to the Sovereign Clerk at Omaha, Neb. The policy does not say it shall be paid directly. The other provision, that the local clerk shall remit all funds, is sufficient provision to cover the extra

premium. It appears in the case that no notice of the extra premium was given to that officer who was authorized to forward all funds. There is no intimation that there was any neglect by any individual agent of the company. There was no evidence or presumption that the beneficiary knew or had possession of the policy, and should have known of the required extra premium. Under these circumstances it was for the jury to say whether the company waived the payment of the extra premium or not.

The judgment is reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Action upon a beneficiary certificate issued by the defendant to Samuel C. Watson, September 24, 1917, payable upon certain conditions to his wife, the plaintiff, Mrs. Mackie Watson. The insured died in France while in the service of the United States army on October 13, 1918, having been drafted June 24, 1918, subsequently to the issuing of the certificate. The amount of the benefit was $500 in the event of death during the first year of membership, $750 if within the second year, and $1,000 if after the second year. The insured having died within the second year, the benefit, if accrued, would be $750, although the complaint is for $1,000.

The certificate contains the following conditions and provisions material to the present inquiry, in substance:

1. If the insured should die outside the limits of the United States while serving in the army or navy, as an officer or an enlisted man, the amount due should be such proportion of the benefit as the period he lived after becoming a member bears to his expectancy of life at the time of his initiation, which would be practically a nominal sum.

2.   The insured was permitted to avoid this limited benefit, under the circumstances stated, and secure the full benefit provided for in the certificate by complying with these requirements:   (a)   The option must be executed within 30 days after entering the service.   (b)   He shall notify the Sovereign Clerk at the home office, Omaha, Neb., that he has entered the service.   (c)   He shall pay in advance to the Sovereign Clerk $37.50 per $1,000 of insurance per annum, in addition to the regular assessment, the installment payment of Sovereign Camp fund, for his age as provided in tables of rates in Section 56 of the constitution and laws.

3.   The insured, who complied with these requirements, was extended the further concession that in the event of his death within the limits of the United States, without having served outside, the total benefit should be paid, together with the war assessments which he may have paid.

These facts are conceded:   (1)   The insured entered the service of the army after he received his certificate.   (2)   The insured died in France, beyond the limits of the United States, while in the service.   (3)   The insured did not within 30 days after his enlistment notify the Sovereign Clerk, at the home office, Omaha, Neb., of that fact.   (4)   The insured did not pay to the Sovereign Clerk the war assessment provided for in his certificate.

It was also shown that from the date of his certificate, September 24, 1917, to the date of his enlistment, the insured duly paid the ordinary Sovereign Camp assessments, the local camp dues, and the war tax (not the war assessments) to the local clerk at Greenwood; that, after he went over seas, the beneficiary under the certificate, the plaintiff here, continued to make similar payments to the same officer, including the month of October, 1918, the month in which the insured died.

It was also shown that when payments were made to the local clerk he assured the beneficiary, who made the pay-

ments, that "the full policy would be paid if she kept the dues paid." Section 55 of the rules requires the local clerk to collect the admission fees, the dues, and the Sovereign Camp fund assessments, and Section 94 requires him to "remit all funds due and belonging to the Sovereign Camp to the Sovereign Clerk as by law provided." Both the clerk who was in the office when the insured received his certificate and the clerk who was in office when the payments were made by the beneficiary, or by some one for her, testified that they knew nothing of the war assessment required; that they made no such collections from any member; that they were not requested by the Sovereign Camp to collect them, and received no literature referring to them.

At the close of all the testimony the defendant moved for a directed verdict for the plaintiff for the amount $28.80, admitted to be due under the condition numbered 1 above; this motion was made upon the grounds set out in the record, which should appear in the report of this case. The motion was granted, and from the judgment entered upon the verdict so directed the plaintiff has appealed.

The opinion of Mr. Justice Fraser proposes to reverse the direction of a verdict, practically in favor of the defendant, upon the ground that there is sufficient evidence of a waiver by the insurer of the vital conditions in the certificate upon which they rely, by reason of the fact that the local clerk collected the monthly dues and assessments without notifying the insured or the beneficiary of the war assessments required; that the local clerk was authorized to receive and forward all funds due to the Sovereign Camp, which included the war assessments, and that his conduct in not calling the attention of the insured or the beneficiary to the war assessments was evidence of a waiver by the Sovereign Camp of the necessity of such payments.

I do not concur at all in this view, and am of the opinion that the verdict was rightly directed. An analysis of the limiting condition (which reduces the benefit to a very small

proportion of its face value) shows that it affects only one class of certificate holders, those who enter and die abroad in the service; and their policies are affected only when these two contingencies concur; until they do concur, the policies are perfectly sound; a certificate holder, so long as he is not so unfortunate as to meet both, suffers no diminution of benefit.

If Watson, without going abroad, (1) had remained in the service here, or (2) died in the service here, or (3) been discharged from the service, or (4) had returned from abroad and remained in the service here, or (5) died in the service here, or (6) been discharged from the service, his policy would have been perfectly good, from the date of the certificate, continuously against these six contingencies, so long as the dues and assessments ordinarily required were paid by or for him. The seventh contingency, that one which happened, he made no provision against. He had a perfect right to take his chances against it, and save the $37.50 if he so desired. How could the defendant know that he had not determined to take this chance until he had done what he contracted to do in the event that they, and not he, were to assume the chance? The policy required that if the defendant was to assume that chance the insured should notify the home office within 30 days after his enlistment, and pay annually, while the increased risk lasted, the war assessment of $37.50 per $1,000 of insurance. This he did not do, and in my opinion cannot force upon the defendant a risk that they specifically contracted with him that they would not assume unless he complied with the conditions referred to.

It would have made no difference if the defendant had had positive knowledge that Watson had enlisted in the service, or if the ordinary dues and assessments had been paid directly to the home office; they could not possibly have known to a certainty that he would be sent overseas: Watson himself could not; doubtless he hoped that he

would not be, and in that event the extra assessment would not be needed, for its only effect would have been to secure him against the contingency of dying in the service abroad. What the defendant was charged with knowing was that if Watson desired to be insured against that contingency he could secure it by giving the notice and paying the war assessment. He did neither, and the defendant had the right to assume that, not being willing to pay for it, he did not desire it.

The provisions of the certificate under consideration do not constitute or make conditions under which a forfeiture of the policy will be insisted upon; they simply provide for an exemption from liability on account of the death of the insured under the circumstances mentioned, in the service in a foreign land. That they had the right to impose this limitation as an increase of the hazard can no more be questioned than a provision against liability in case of suicide, which has never been suggested as a ground of forfeiture, but is recognized as a contractual exemption. That they could not constitute a ground of forfeiture is shown by the unquestionable right of the insured to pay the ordinary assessments and continue his insurance in full force, with the exception that it did not cover the contingency against which he had the contractual right to protect himself, but did not.

In *Mattox v. Insurance Co.* (Ga. App.) 103; S. E., 180, the policy provided that it should be void if the insured within five years engaged in military service in time of war without the written consent of the company; that, upon breach, the liability should be limited to a return of the premiums; but that the policy should cover such risks if the insured, within 31 days after enlistment, should pay to the company at its home office such extra premium as might be required. The insured paid the first premium in June, 1917, and arranged for the second in June, 1918; he enlisted in August, 1918, remained in camp until Oc-

tober 1st, and then sailed for France; on October 15th he died at sea, not having notified the home office of his enlistment or paid the war assessment. The Court decreed in favor of the defendant, holding:

"It was clearly understood by both parties to the contract that, if the insured thereafter entered the military service, he must pay an extra premium to keep the policy in force for any amount except for the premium which he had paid, and that it was incumbent upon the insured, if he desired to keep the policy in force for its full value, to notify the company of his intention to enter military service, so that the company would have an opportunity to demand of him the extra premium required, under the terms of the war clause, for such service."

I cannot conceive of a fairer proposition than that contained in the policy. This nation was at war; its resources and men were pledged to contribute to its successful conclusion; the company knew that some of its members would be called to the colors; common sense teaches that the entrance of a member into this service tremendously increases the hazard against which, in ordinary conditions, the company undertook to insure, and the basis on which the ordinary assessments were levied. With this increased hazard thrust upon them, the company had the right, and it was its duty, to make provision against it. It did so by contract solemnly entered into and by which the insured was as much bound as the company.

The contract notified the insured that the company stood for liability upon every contingency except his death in the service upon foreign soil, when the war was actually being waged, and where, of course, the hazard was greatest. It notified him that he could extend the insurance to cover this solely excepted risk by complying with certain requirements which have been referred to. It guaranteed him further that, if he should comply with these requirements, and die in this country without having gone abroad, all of

24—s. c. 116

the war assessments paid should be returned.   It is difficult to imagine a provision more reasonably calculated to protect the rights of the company and at the same time to make a generous concession to the insured, for, in strict justice, the payment of the war assessments would have been compensated for by the assumption of the increased hazard which was probable, and the company would have been under no obligation to have returned them.

As to the evidence of a waiver by the company of the right to insist upon exemption from liability under the excepted contingency which actually occurred, bear in mind that the engagement by contract was that the company would not be liable in the event that the insured died in the service abroad, unless he complied with the requirements essential to the assumption by the company of that particular risk.   In other words, the compliance was made a condition precedent to such engagement by the company; there was no contract covering this risk until the condition precedent was met.   It therefore does not present a case of forfeiture or one of waiver by the company of the condition.

In quite a similar case from Arkansas, *Miller v. Ins. Co.,* 138 Ark., 442; 212 S. W., 310; 7 A. L. R., 378, the Court declared:

"It will be observed that the provision of the policy now under consideration is not for a forfeiture, but is merely an exemption from liability on account of death occurring under certain circumstances.   It is not a case where acceptance of premiums with knowledge of the forfeiture constitutes recognition of the continued, valid existence of the policy; nor does the case fall within the principle that a forfeiture is waived where an insurance company, when it enters into a contract, has knowledge through any of its authorized agents of facts which would work a forfeiture. *
*    *    *

"There was no forfeiture provided for at all, but the company had, as before stated, the right to stipulate under what circumstances it should be liable. The insured had the right to pay the premium and continue the policy in force while he was in the military service of the government, notwithstanding the exemption of the company from liability for death occurring during the period of that service."

This is a much stronger case for the plaintiff than the one at bar, for there the agent of the company not only knew of the provision in the policy relating to service, but accepted the ordinary premium under his construction that the exemption only affected death in battle. The Court, however, held that it did not present a case of forfeiture or waiver of forfeiture, and that the agent was without authority to project the company into a contract which they had not entered into. See, also, *Field v. Western Life Indemnity Co.* (Tex. Civ. App.) 227; S. W., 530; *American Nat. Ins. Co. v. Turner* (Tex. Civ. App.) 226; S. W., 487; *Mississippi Centennial Exp. Co. v. Luderbach,* 123 Miss., 828; 86 South. 517; *Long v. St. Joseph Life Ins. Co.,* (Mo. App.) 225 S. W. 106; *Carter v. Sovereign Camp, Woodmen of the World* (Tex. Civ. App.) 220 S. W., 239; *Reid v. Am. Nat. Assur. Co.,* 204 Mo. App, 643; 218 S. W., 957; *Miller v. Illinois Banker's Life Ass'n.,* 138 Ark., 442; 212 S. W., 310; 7 A. L. R., 378; *Slaughter v. Protective League Life Ins. Co.,* (Mo. App.) 223 S. W., 819; and *Ruddock v. Detroit Life Ins. Co.,* (Mich.) ; 177 N. W., 242.

It will be noted that the effect of the provision, primarily, is to exempt the company from liability under the stated contingency. It does not assume the risk at all until the conditions have been performed; a marked difference between it and a contract which assumes the stated risk primarily, and provides for relief under certain circumstances upon the happening of which a forfeiture convenes· In the one case there is no opening for a forfeiture; in the latter there is, which may be defeated by waiver. It is incon-

ceivable to me that a party may be waived into a contract which it has not entered into, waived into the assumption of a risk which it expressly declines to assume except upon conditions which have not been performed.

A case may be imagined where the policy would be of no effect at all unless it applied to certain exempted risks which were necessarily incident to the occupation of the insured, known to the company at the time the policy was issued, and upon which premiums were accepted. The company under the circumstances might well be held estopped from claiming the exemption; but, not constituting a forfeiture, there would be no applicability of the doctrine of the waiver. Here, however, we have a case where the policy remains of force as to all contingencies but the excepted one, and the failure of the insured to provide for it may well be assumed by the company to have been intentional.

Assuming, however, that the doctrine of waiver is applicable to the case, the facts relied upon to produce a waiver by the insured are: (1) The knowledge of the local clerk that the insured had enlisted in the service· (2) The payment by or for the insured of the monthly dues and assessments. (3) The declaration of the local clerk that the policy would be paid if the monthly dues and assessments were kept up. An insuperable barrier to the benefit of a waiver are the terms of the statutes (§ 2755, Vol. 1, Code of Laws, 1912), as follows:

"No subordinate body, or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

—which has been construed by this Court in the following cases: *Currence v. Woodmen of the World,* 95 S. C., 61; 78 S. E., 442; *Crumley v. W. O. W.,* 102 S. C., 386; 86 S. E., 954; *Vant v. Grand Lodge,* 102 S. C., 413; 86 S. E., 677; *Outlaw v. National Council,* 107 S. C., 226; 92 S. E.,

469; *Sternheimer v. United Commercial Travelers,* 107 S. C., 291; 93 S. E., 8; *Dillingham v. Junior Order,* 113 S. C., 430; 102 S. E., 721.

In addition to this, subdivision A of Section 69 of the rules of the insurer, made by the terms of the application and certificate a part of the contract, provides:

"No officer, employee, or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary, or waive any of the provisions of this constitution or these laws nor shall any custom on the part of any camp or any number of camps— with or without the knowledge of any sovereign officer— have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted."

But if neither of these provisions could be invoked for the protection of the insurer, the evidence relied upon carries no probative force whatever in establishing a waiver by the insurer of the exemption upon which it relies.

The knowledge by the local clerk of the fact that the insured had enlisted in the service could furnish no possible evidence of the waiver, for the apparent reason that the policy was .good against all contingencies except the one under consideration. The local clerk, as well as the insurer, may well have assumed that the insured assumed that risk himself.

For the same reason the payment of the ordinary monthly dues and assessments may be assumed to have been made to keep the policy alive to all contingencies except the one that carried the exemption; the local clerk could not have refused to accept the payments as they were made, it would be illogical therefore to hold that the Company is prejudiced by what the Clerk *had* to do.

The declarations of the local clerk were clearly outside the scope of his employment, and in fact, as the testimony shows, were made without any knowledge whatever of the provisions requiring notice of enlistment and payment of the war assessements.  Waiver is the voluntary relinquishment of a known right; it could hardly be held that the local clerk could ,waive a provision ·in the contract that he knew nothing of.

Local camp dues and the ordinary assessments payable monthly, necessary to maintain the beneficiary certificate in force and effect for any purpose whatever, were payable to local camp clerk.  Neither the camp clerk nor any other local official had any duty in connection with the payment of the extra war assessment, which was an additional premium, payable for an extra hazard, which might obtain during the life of the policy.  Therefore, no local camp official had any authority, real or apparent, to demand, collect, receive, and remit the additional war. risk assessment; hence there could be no waiver of the notice and payment of the war risk assessment.  The case of Vant and of Sternheimer, cited above, are in point here.

I think that it is a strained construction to hold that because the local clerk was authorized to collect and remit funds due to the Sovereign Camp he was authorized to collect and remit the war assessments.  There is nothing in the record to show that he was so authorized; nothing to show that he knew anything about such assessments; on the contrary he testified that he had never  so  much  as heard of them; and the policy requires that the remittance be made to the Sovereign Clerk.  It does not use the word "directly," but that is the evident purport.  Even if this construction should be allowed, the insured utterly failed upon the other requirement of notice to the Sovereign Clerk at the home office of his enlistment.

To characterize the evidence relied upon as evidence of a waiver is a misnomer.  There is no provision for a for-

feiture, and there can therefore be no waiver. The effect appears to be to modify the terms of the written contract by parol testimony and to avoid the rule by denominating it a waiver·

I think, therefore, that the Circuit Judge was entirely right in directing the verdict as he did, and that the judgment below should be affirmed.