MILLER v. ILLINOIS BANKERS' LIFE ASSOCIATION.

Opinion delivered April 28, 1919.

1. INSURANCE—EXCEPTION OF WAR RISK—VALIDITY.—A policy of life insurance which exempted the insurer from liability for death in the military or naval service of the government is not void as against public policy.

2. INSURANCE—DEATH IN MILITARY SERVICE.—Death of insured from pneumonia at a camp in the United States while in the military service during the war with Germany was "in the service in the army or navy of the Government in the time of war" within an exception in a policy of life insurance.

3. INSURANCE—EXEMPTION PROVISION—ACCEPTANCE OF PREMIUMS AS WAIVER.—By accepting premiums with knowledge that insured was serving in the army, the insurer did not waive a provision exempting it from liability for death in the military service.

4. INSURANCE — AUTHORITY OF AGENT TO INTERPRET POLICY.—The county agent of a life insurance company was without authority to issue policies or interpret their terms, had no apparent authority to bind the insurer by a statement as to the meaning of a clause of the policy exempting the insurer from liability for death in the military service in time of war.

Appeal from Conway Circuit Court; *A. B. Priddy,* Judge; affirmed.

*W. P. Strait,* for appellants.

1. The court erred in holding that under the testimony there was no question of fact for the jury, and in taking the case from the jury and in holding that appellee was only liable for the amount of premiums paid by assured. It was not exempted from liability for death from natural causes while in the military service. The company is bound by the acts of its agent Scroggins, and his knowledge was its knowledge. It is bound by the acts of its agent, as he acted within the scope of his authority. 103 Ark. 86; 96 *Id.* 456; 31 Cyc. 1645; 1 Clark & Sykes on Agency § 200; 63 Iowa 340; 9 Ala. 279; 93 Ark. 521. The agent at the time he made the representations and induced the assured to pay the premiums knew that the assured was in the military service and that the Government was at war, and his knowledge is imputed to

the company. 111 Ark. 443; 79 *Id.* 315; 88 *Id.* 554; 71 *Id.* 295; 104 *Id.* 538; 57 *Id.* 11; 71 *Id.* 295; 56 *Id.* 581; 102 *Id.* 146. If any negotiations or transactions are had with the assured after knowledge of the conditions, the company recognizes the validity of the policy and acts based thereon the forfeiture is waived and the company is liable. 94 Ark. 277; 65 *Id.* 54; 99 *Id.* 476; 67 *Id.* 584.

2. Whether Scroggins was acting within his authority or not in leading assured to pay his premiums was a question for a jury. 99 Ark. 476; 81 *Id.* 160. It was not the province of the court, but of the jury to determine whether or not the agent in making the representations which induced payment of the premiums and in collecting same was acting within the scope of his actual authority. 13 L. R. A. (N. S.) 840.

3. The company is estopped. 79 Ark. 315. The acts of the agent bind the company after knowledge. 24 Am. Rep. 784; 85 Mo. App. 155. Where the terms of the application or policy are ambiguous and the agent interprets them and thus induces the assured to pay the premiums, the company is liable in case of loss. 13 L. R. A. (N. S.) 850, note. The nearest parallel case we find is in 66 Ark. 597.

4. The clauses limiting liability are against public policy and void.

*Webber & Webber,* for appellee.

1. The clauses limiting liability are not void as against public policy and the company is not estopped by the acts of its agent. 3 Cooley Briefs on the Law of Insurance 2217-18, 2231; 4 *Id.* 2231, 3275; 4 Joyce on Ins. (2 ed.) 3818-20-1-5; 148 Ill. App. 189; 243 Ill. 411; 126 Ill. App. 572; 25 Cyc. 823; 102 Ill. App. 280; 100 *Id.* 22; 48 *Id.* 148.

2. Scroggins' acts were not a waiver of the forfeiture. 159 S. W. 1113. He was not a general agent, but only a special agent and had no authority to waive.

McCULLOCH, C. J.  Appellant instituted this action against appellee to recover on a life insurance policy

issued by the latter on March 6, 1915, to Arl E. Miller, who died at Camp Beauregard, Louisiana, on December 26, 1917, while in the military service of our Government. Death of the insured resulted from pneumonia.

The facts of the case are undisputed, and the trial court decided that there was no liability under the policy, except to the extent of the small sum paid to the company by the insured as premiums. The policy contained the following clause:

"It is expressly provided that death while in the service in the army or navy of the Government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the company thereon."

There is another clause in the policy which reads as follows:

"This policy shall be incontestible two years from its date except for non-payment of premium calls, or death while engaged in or caused by violation of the law or while in the service of the army or navy of any government which is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the association thereon."

The application contained a clause similar to the one last quoted. The clauses quoted above are not entirely consistent with each other in that the one first quoted provides for an exemption from liability on account of death of the assured while in the army or navy service of the Government "in time of war," and the other two clauses contain much broader provisions, exempting the company from liability for death while in the army or navy of the Government without restriction as to it occurring during time of war. The death of the assured occurred while he was in the military service of this Government during the period of the war with the Central Powers of Europe, and it is unimportant, therefore,

to attempt to reconcile the apparently conflicting clauses or to determine which of them controls.

It is suggested by learned counsel for appellant that the above mentioned provisions exempting the company from liability·under the circumstances named ought to be held void for the reason that it is against public policy to permit such contracts of insurance to be made, in that the tendency is to prevent voluntary enlistments in the army or navy of the Government, or to induce the holder of such a policy to evade or resist involuntary enlistment under the draft laws. We do not think the argument is well founded. 'An insurance company has the right to select the particular risks it is willing to assume, and there is no public policy against a contract of this sort exempting the insurance company, in advance, from liability for death of the insured while in the military or naval service of the Government. The stipulation does not provide for a forfeiture of the policy, but merely for an exemption from liability under certain circumstances and conditions. It holds out no inducements to the assured to refrain from enlistment in his Country's service, and does not constitute, in any sense, an agreement not to enlist or to evade the draft law. No authorities are cited by counsel in support of the contention, and we are unable to find any cases in which the question has been raised. The subject of exemptions from liability on insurance policies in case of service in the army or navy is discussed by Mr. Joyce in his work on the Law of Insurance (Vol. 4, Sec. 2237), but there is no suggestion there by the author of any question of doubt about the validity of such a provision. There is likewise a discussion on the subject in Cooley's Briefs on the Law of Insurance (Vol. 3, p. 227, *et seq.*), but nothing is said by that author about the possibility of those provisions being held to be void. We find two cases on the subject, in one of which the insurance company was held not to be liable under such an exemption (*LaRue* v. *Insurance Co.*, 68 Kans. 539) ; and in the other (*Welts* v. *Conn. Mutual Life Insurance Co.*, 48 N. Y. 34) the company was held

liable for the reason that the death of the insured did not fall within the terms of the exemption as interpreted by the court rendering the decision. In each of the cases the assured was in the service of the Government during the pendency of war, but in one of the cases it was decided the assured was not in the military service, and that the case was for that reason not within the exemption.

The trial court was, therefore, correct in the present case in holding that the death of the insured fell within the exemption clause set forth in the policy.

The principal contention of counsel for appellant is that there was a waiver of the exemption provision of the policy. In support of that contention in the trial below appellant introduced as a witness Mr. Scroggins, who testified that he was the agent of the insurance company at Morrilton, where Arl E. Miller resided, and that he stated to Miller, in response to an inquiry by the latter after he had enlisted in the army as to whether or not under the terms of the policy the full amount would be paid in the event of death while in that service, that he (witness) construed the policy to mean that there was only an exemption in case of death of the assured in battle, and that the exemption clause did not apply to death from natural causes. The exact statement of the witness was as follows: ''He asked me if the policy would be good in event of his death in the service, and I told him that it was my construction of the war clause in this policy, if he died of natural causes it would be paid, but if he died by violence while in battle, it would not. I also called his attention to the Fulkerson claim as my conclusion of the matter. And he says, 'Well, if it won't be good I don't want to pay any more, but if it will I want to continue my policy.' And I told him it would be good in event of his death by natural causes. So one year's premium was paid to me a few days later almost on the same spot of ground.  *  *  *  Mr. Ben Fulkerson had a policy. He volunteered in the service at Jefferson Barracks, Mo., in September, 1916, and this country was

not at war that time, and he died of contagious disease in the army and the company paid this claim."

The witness testified that he was the county agent for the company, and that his duties were to solicit insurance, forward applications to the home office of the company, and deliver policies sent to him from the home office for that purpose, and to collect the initial premiums on delivery of a policy. He also testified that he sometimes collected premiums on policies already delivered, but, that this was generally for the convenience of the parties, though the company paid him a commission on all such collections.

It will be observed that the provisions of the policy now under consideration is not for a forfeiture, but is merely an exemption from liability on account of death occurring under certain circumstances. It is not a case where acceptance of premiums with knowledge of the forfeiture constitutes recognition of the continued valid existence of the policy; nor does the case fall within the principle that a forfeiture is waived where an insurance company when it enters into a contract has knowledge through any of its authorized agents of facts which would work a forfeiture. *Peoples Fire Ins. Assn.* v. *Goyne,* 79 Ark. 315; *Lord* v. *Des Moines Fire Ins. Co.,* 99 Ark. 476; *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 435.

There was no forfeiture provided for at all, but the company had, as before stated, the right to stipulate under what circumstances it should be liable. The assured had the right to pay the premium and continue the policy in force while he was in the military service of the Government, notwithstanding the exemption of the company from liability for death occurring during the period of that service, and the mere acceptance by the company of the premium with knowledge of the fact that the assured was in the military service of the Government did not constitute a waiver of the stipulation in regard to exemption. In other words, when the assured paid his premium, his policy was kept in force, and

would have remained in force if the assured had survived the period of his service in the army.

Conceding, therefore, that the knowledge of Scroggins, the agent of the company, was the knowledge of the company itself, there was no waiver on account of acceptance of the premium with knowledge of the fact that the assured was serving in the army. The statement of Mr. Scroggins to the assured on the occasion mentioned by Scroggins as to his interpretation of the exemption clause of the policy was not binding on the company, for it was not done within the apparent scope of the agent's authority. There is not the slightest evidence that the statement was made for the fraudulent purpose of inducing Miller to pay the premium, or that it was not made in good faith in response to Miller's inquiry. It was only an expression, given in obvious good faith, of the personal opinion of the witness as to the proper construction of the language of the policy. Scroggins had no authority to issue policies or to alter or interpret the terms thereof. The policy had already been issued and delivered more than two years before this conversation occurred, and the agent had no duty to perform with respect to the matter, and it was entirely beyond the apparent scope of his authority to advise the assured as to the legal effect of the various clauses in the policy. *Home Fire Ins. Co.* v. *Wilson,* 109 Ark. 324.

Counsel rely especially on the case of *Standard Life & Accident Ins. Co.* v. *Schmaltz,* 66 Ark. 588, where the court held that knowledge on the part of the company at the time of the issuance of an accident policy that certain risks necessarily pertained to the occupation and employment of the assured, constituted a waiver of a provision in the policy exempting the company from such liability.

We think that decision has no application to the facts of the present case, for in that case the policy would have had no force at all unless it embraced the risks mentioned in the exemption clause, and the knowledge of the company of the existence of facts which brought the

circumstances of the assured within the exemption clause necessarily operated as a waiver by treating the policy as being in force notwithstanding the facts which would render it inoperative. Here we have a case, as before stated, where the policy remains in force, notwithstanding the temporary existence of conditions, i. e., the service by the insured in the army, which exempted the company from liability, and the mere acceptance of premiums with knowledge of that service did not constitute a waiver of the exemption.

Our conclusion is that the circuit court was correct in its decision, and the judgment is, therefore, affirmed.