## JOHNSON *v.* MUTUAL LIFE INSURANCE COMPANY.

1. If a policy of insurance is so drawn as to require interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured.

2. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice.

3. Provisions in policies of insurance, that the insurer does not assume risk of death which shall occur while the insured is engaged in military service, or will not be liable for such death, have been held to exempt the insurer from liability, nothwithstanding the fact that death did not result from any hazard peculiar to such service, the

status of the insured and not the cause of his death being the ground of such exemption.

4. Under a policy in which the insurer agrees to pay double indemnity in case of the death of the insured resulting from bodily injury effected solely through external, violent, and accidental means, a provision, " that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, . . nor if such death be caused directly or indirectly, wholly or partly, by . . war, or any act incident thereto," will not relieve the insurer from liability, when the death of insured did not result from his service in the military in time of war, or where his death was not caused directly or indirectly, wholly or partly, by war, or by some act incident thereto.

5. Where the insured was killed on June 27, 1919, while in the military service of the United States, and while he was being transported on a troop-train from Fort Oglethorpe, Ga., to San Francisco, Cal., to be embarked at the latter place for Honolulu, to join other military forces of the United States at that place, his death resulting from his being struck by the girder of an overhead bridge over which such troop-train was passing, near Granger, Wyoming, the death of the insured under these circumstances would not exempt the insurer from the payment of double indemnity, under the above provision of the policy under which his life was insured; especially where it was not shown by the insurer that the death of the insured was the result of his military service, or was caused by war, or an act incident thereto, and when it appears that his death was due to a fatality which befalls soldier and civilian alike.

No. 3173.   DECEMBER 15, 1922.

Certiorari; from Court of Appeals.   28 *Ga. App.* 330.

*King & Johnson*, for plaintiff.

*Bryan & Middlebrooks* and *F. L. Allen*, for defendant.

HINES, J.   The policy of insurance, upon which action in this case was brought, provides that upon the receipt of due proof that the death of the insured resulted directly from bodily injury, independently of all other causes, and that such bodily injury was effected solely through external, violent, and accidental means, and that death occurred within sixty days after such bodily injury, the company would pay to the beneficiary double indemnity; " provided, however, that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, . . nor if such death be caused directly or indirectly, wholly or partly, by . . war, or any act incident thereto, . . or from police duty in any military, naval or police organization." The policy was taken out on June 5, 1919. On June 10, 1919, the insured enlisted in the army of the United

States; and at the time of his death on June 27, 1919, he was in the military service of the United States. At the time of his death the insured was being transported, with other troops of the United States, on the Union Pacific Railroad, which was then under government control and management, from Fort Oglethorpe, Ga., to San Francisco, Cal. At the latter point, these soldiers were to be embarked for Honolulu, to join other military forces of the United States at that place. The insured was killed near Granger, Wyoming, by being struck on the head by the girder of an overhead bridge, over which the troop-train, on which he was being transported, was passing. At the time he was struck and killed, the insured was standing upon the step, or looking out of the window, of one of the cars of said troop-train. The trial judge, to whom the case was submitted, by agreement, upon the facts stated in the petition and answer, rendered judgment for the plaintiff. This judgment was reversed by the Court of Appeals. *Mutual Life Ins. Co.* v. *Johnson,* 28 *Ga. App.* 330 (110 S. E. 910). The case is in this court upon certiorari to review the judgment of the Court of Appeals. The Court of Appeals held, that the above provision of this policy exempted the insurer from liability for the payment of the double indemnity therein assumed by it. The correctness of this decision depends upon the proper construction of the stipulation in the policy, " that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, . . nor if such death be caused directly or indirectly, wholly or partly, by . . . war or any act incident thereto."

If a policy of insurance is so drawn as to require interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured. *Thompson v. Phenix Insurance Co.,* 136 U. S. 287 (10 Sup. Ct. 1019, 34 L. ed. 408); *Mass. Ben. L. Asso.* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918, 42 L. R. A. 261). Policies of insurance will be liberally construed in favor of the object to be accomplished, and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts. *Arnold v. Empire Life Ins. Co.,* 3 *Ga. App.* 695 (60 S. E. 470); *Perkins v. Empire Life Ins. Co.,* 17 *Ga. App.* 658 (87 S. E. 1094); *Wright v. Fuller,* 148 *Ga.* 223, 226 (96 S. E. 433); *Ætna Ins. Co.* v.

*Johnson,* 127 *Ga.* 491, 493 (56 S. E. 643, 9 L. R. A. (N. S.) 667, 9 Ann. Cas. 461). This is so because such policies are issued upon printed forms, prepared by experts at insurer's instance, and the insured has no voice in their preparation. Benham *v.* Am. Cen. L. Ins. Co., 140 Ark. 612 (217 S. W. 462).

Provisions in policies of life insurance, that the insurer does not assume risk of death which shall occur while the insured is engaged in military service, or will not be liable for such death, have been held to exempt the insurer from liability, notwithstanding the fact that death did not result from any hazard peculiar to such service. Coxe *v.* Employers' Liability Assur. Cor., 2 K. B. 629; Ruddock *v.* Detroit L. Ins. Co., 209 Mich. 638 (177 N. W. 242); Olson *v.* Grand Lodge (N. D.), 184 N. W. 7, 15 A. L. R. 1270; Huntington *v.* F. R. A., 173 Wis. 582 (181 N. W. 819); La Rue *v.* Insurance Co., 68 Kan. 539 (75 Pac. 494); Miller *v.* Ill. Bankers' Life Asso., 138 Ark. 442 (212 S. W. 310, 7 A. L. R. 378); Field *v.* Western L. Indemnity Co. (Tex. Civ. App.), 227 S. W. 530; Nowlan *v.* Guardian L. Ins. Co., 88 W. Va. 563 (107 S. E. 177); Slaughter *v.* Protective League L. Ins. Co., 205 Mo. App. 352 (223 S. W. 819); Malone *v.* State L. Ins. Co., 202 Mo. App. 499 (213 S. W. 877); Reid *v.* Am. Nat. Ins. Co., 204 Mo. App. 643 (218 S. W. 957). In such cases the status of the insured, and not the cause of death, is the ground upon which the exemption of the insurer from liability stands; and these and like authorities hold that such exemption exists whether death occurs from natural causes wholly disconnected from the hazards of war, or from such hazards. Under such provisions, when the insured is engaged in military service, whether voluntary or involuntary, and he dies in such service, from any cause, these authorities hold that there can not be any recovery.

But under the terms of the policy, which we are considering, there is no inhibition against the insured engaging in the military service of his country. This policy contains no stipulation that the insurer will not be liable for this double indemnity if the death of the insured should occur while he was engaged in such service. This policy declares " that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, nor if such death be caused directly or indirectly, wholly or partly, by . . war, or any act in-

cident thereto." If the insurer had intended that it was not to be liable for this double indemnity if the insured died while in the military service from any cause whatsoever, it would have been an easy matter to have written such a stipulation in the policy. Such a provision would have made the insured's status in the military service, at the time he met his death, and not the cause of his death, the ground of the insurer's exemption from liability. But the insurer, by this stipulation in this policy, made the cause of the death of the insured, and not his status as a soldier, the thing which would relieve it from the payment of this double indemnity. This is clearly shown by the language employed. The words used make death, not in, but as the result of, military or naval service in time of war, or caused by war, or some act incident thereto, the condition which would free the company from this double indemnity. This language is pregnant with cause as the exemption from liability in this matter. If the death of the insured was not the result of military service in time of war, or if it was not caused directly or indirectly, wholly or partly, by war, or some act incident thereto, the insurer would be liable for this double indemnity, although the insured died while in the military service of his country. Gorder v. Lincoln Nat. L. Ins. Co., 46 N. D. 192 (180 N. W. 514, 11 A. L. R. 1080); Myli v. Am. L. Ins. Co., 43 N. D. 495 (175 N. W. 631, 11 A. L. R. 1097); Welts v. Conn. Mut. L. Ins. Co., 48 N. Y. 34 (8 Am. R. 518); Malone v. State L. Ins. Co., supra; Nutt v. Security L. Ins. Co., 142 Ark. 29 (218 S. W. 675); Benham v. Am. Gen. L. Ins. Co., supra; Redd v. Am. Gen. L. Ins. Co., 200 Mo. App. 383 (207 S. W. 74); Kelly v. Fidelity Mut. L. Ins. Co., 169 Wis. 274 (172 N. W. 152, 4 A. L. R. 845).

In Kelly v. Fidelity Mut. L. Ins. Co., supra, the Supreme Court of Wisconsin says: " The policy does not say that recovery shall be limited to the return of premiums paid if death shall occur while the insured is engaged in the service or work described, but the limitation applies only to death which occurs as a result, directly or indirectly, of engaging in such service." In that case the insured was in the military service in France, and, as a part of his military duties, was engaged in supervising the construction and operation of sawmills, sawing lumber for the use of the American Expeditionary Forces. In going from one sawmill to another, he was thrown from his motorcycle and killed. The insurance

company was held liable on its policy on his life, in spite of the provision therein that it would not be liable if the insured should "engage in any military or naval service . . and shall die . . as a result, directly or indirectly, of engaging in such service."

In the policy in Gorder *v.* Lincoln Nat. L. Ins. Co., supra, the insured was required to obtain a permit from the company to engage in military service in war, and to pay an extra premium. In the event of his failure to do so, it was stipulated that, in case of the death of the insured in consequence of such service, the liability of the company should be no greater than the legal reserve in the policy. Without obtaining such permit, the insured entered the military service, and died of pneumonia about seven days after crossing the sea and debarking at Liverpool, England. It was held in that case, by the Supreme Court of North Dakota, that "the cause above referred to does not limit the liability of the company, except where death occurs in consequence of military or naval service." To a like effect are the other decisions above referred to; and we need not make quotations from them to support the conclusion which we have reached in this case. The deceased did not die as a result of the military service in which he was engaged. The untimely occurrence by which he was dispatched was not the result of his military service, directly or indirectly. It was a fatality which might befall soldier and civilian alike. His death was not due to war, nor to some act incident thereto. It was not shown that he was even being transported to the scene of any war. So far as appears, it was the transportation of troops upon a peace footing. Anyway, the burden was on the insurance company to show that this transportation of troops was an act incident to war, and that the death of the insured was caused thereby. Gorder *v.* Lincoln Nat. L. Ins. Co., supra.

So we feel constrained to reverse the judgment of our able brethren of the Court of Appeals.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., dissenting. I dissent from the judgment of reversal in this case, being of the opinion that the Court of Appeals correctly construed and applied the provision in the policy exempting the insurer from liability in the event of the insured's death happening as the result of military or naval service in time of

war, where such death was caused directly or indirectly by war or any act incident thereto. In my opinion, the death of the insured in this case was caused by an act incident to military service in time of war. I therefore dissent from the decision rendered by the majority of this court.