This is a suit by the beneficiary to collect the face amount of two policies of life insurance issued by the defendant company on the life of plaintiff's son, who died January 3, 1944, while in the service of the United States Navy.
The only point involved in this case is the interpretation of two similarly worded limitations of liability contained in the policies bearing upon the eventuality of military or naval service by the insured.
The facts, which are undisputed, show that the defendant insurer issued a policy on the life of Robert Edwards, Jr., on or about June 17, 1935, in the amount of $250, and, subsequently, on or about June 7, 1943, issued a second policy in the amount of $750 on the life of the same insured. Plaintiff is the beneficiary under the two policies, and brought this suit to collect the face amounts thereon, together with attorney's fees and interest at the rate of 6% per annum. The sole defense is that the policies themselves contain contractual provisions, which, in the case of the policy first referred to, limited the defendant company's liability to the net reserve, and, with respect to the second policy, to the reserve, or to one-fifth of the face amount, whichever was the greater.
The aggregate liability on the two policies, under defendant's contention, amounts to a total of $200, while plaintiff claims the sum of $1,000, the contention for attorney's fees and 6% interest having been expressly abandoned.
The question involved in this case is res nova in our jurisprudence, and, while there is no substantial sum of money involved herein, the principle is important, and will likely affect the disposition of future cases of a similar nature, which may involve, in the aggregate, considerable amounts.
The facts adduced on trial, and reflected in a stipulation and agreement of facts, show that the insured, having completed his boot training, was sent to the United States Naval Training School (Radio) at the University of Colorado, Boulder, Colorado, for special training. It was while in attendance at this school that insured died, on January 3, 1944. The details surrounding the death of this young man are set forth in a letter from his Commanding Officer, dated January 4, 1944, and directed to the father, plaintiff herein. We quote the following extract from the letter for the purpose of showing the facts:
"I have the sad duty of informing you of the death of your son, Robert Edwards, Junior, Seaman second class, of pneumonia, at the Radio Training School, University of Colorado, Boulder, Colorado, Monday, January 3rd, 1944.
"Robert apparently intended using his Sunday, January 2nd, liberty to go into Denver with some shipmates, but did not get up in time for breakfast at the school. He went down town for breakfast. Feeling ill, he returned to his barracks and went back to bed, failing to report his illness, thinking perhaps it was only a temporary upset. His shipmates, thinking the same, went on to Denver. At 6:00 P. M. Sunday he was found in his bunk very seriously ill. A stretcher was called for and he was immediately carried to the *Page 554 
station sick bay where at 6:20 p.m. the Naval doctor, Lieutenant K.J. Dunlavy, MC-V(S), U.S.N.R., who was instantly summoned, examined him. The doctor reports that when he examined Robert his rectal temperature was 106 degrees, he has little or no pulse, and was in a coma. He was instantly rushed to the Sanitarium Hospital here in Boulder and placed under an oxygen tent and sulfa drugs carefully administered. During the night five (5) different doctors examined him and everything possibly was done for him that could possibly be done. But at 6:10 a.m. Monday morning he passed away in spite of all efforts to save him.
"As his Commanding Officer I sincerely regret this most unfortunate event and extend to you and your family my deepest and most heartfelt smypathy. Rest assured that every measure possible was taken to alleviate his condition, but nothing seemed to help. The X-ray showed that his right lung was definitely affected by a pneumonia which the doctors say was of a very virulent type. Robert was a splendid Navy man and we regret his loss exceedingly."
The other pertinent facts in connection with the case are contained in a stipulation signed by counsel for plaintiff and defendant, which reads as follows:
"Plaintiff and defendant herein stipulate and agree to the following facts:
"1. That there is attached hereto a photostat copy of a specimen of the $250.00 policy involved in the premises.
"2. The $750.00 policy contains the following provision:
" 'Military, Naval and Air Service — The liability of the Company shall be limited to the reserve on this Policy, or to one-fifth of the amount payable hereunder on the death of the Insured, whichever is the greater, if the Insured should die while enrolled in military, naval, or air service in time of war, whether declared or undeclared; or if the Insured should die as the direct or indirect result of such service, without securing a permit signed by an executive officer of the Company, and paying such extra premium as the Company may fix to cover the hazard.'
"3. That the $250.00 policy contains the following provision:
" 'Military and Naval Service — The insured may serve in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the Company for such service and an extra premium paid. Should the insured die while enrolled in such service in war time without such permit, the Company's liability will be restricted to the net reserve on this policy.'
"4. That no permit was secured from the Company, defendant herein, and no extra premium was paid to the Company, defendant herein, as is provided for in the above two quoted sections of the policies, set forth in paragraphs two and three.
"5. That the insured died while enrolled in Military, Naval or Air Service in time of war.
"6. The net reserve on the $250.00 policy is $50.00.
"7. The net reserve on the $750.00 policy is less than $150.00."
Upon the basis of the above facts, the issue is clear-cut. Briefly stated, plaintiff's position is that there must be a causal connection between the death of the insured and his military service in order to bring into effect the limitation of liability contained in the above quoted provisions of the policies, while it is urged on behalf of defendant that these limitations became effective automatically, in accordance with the policy provisions, when the status of the insured as a member of the armed forces in time of war was established.
The insured at the time of his death was a member of the naval forces of this country in time of war, and had not procured a permit from the insurer nor paid any additional premium.
The question here involved, in a general sense, has been considered many times by the courts of other jurisdictions, but the particular point has arisen only once, as far as we are able to determine, and to this instance we will later refer in detail.
Examination of text books on insurance discloses a discussion of the various phases of the question with particular reference to the holdings of the several courts which have considered the same, but fails to bring to light the enunciation of any rules which might serve as a guide in the instant case. Cooley's Briefs on Insurance, Second Edition, Volume 6, page 5192, referring to (Death while engaged in) "Military or naval service"; Couch Cyclopedia *Page 555 
of Insurance Law, Volume 6, Section 1242, "Death as result of engaging in war service"; American Jurisprudence, Volume 29, verbo "Insurance," Section 911, "Death while Engaged in Military or Naval Service"; Volume 45 C.J.S., verbo "Insurance," Section 849, "Death in Military or Naval Service; War"; 137 A.L.R. 1263, et seq., superseding prior annotations in 4 A.L.R. 848; 7 A.L.R. 382; 11 A.L.R. 1103, and 15 A.L.R. 1280.
[1] One of the rules which has been definitely established is that courts have no authority to go beyond the plain and unambiguous wording of a policy agreement, which is the contract between the parties, and, under the guise of interpretation, attempt to alter or change the plain meaning thereof. We find the latest expression of this rule in the case of Bending v. Metropolitan Life Insurance Co., 74 Ohio App. 182,58 N.E.2d 71, 73:
"* * * the court has the duty to enforce insurance contracts as made by the parties and not to rewrite or to distort, under the guise of judicial construction, contracts the terms of which are unambiguous, so long as they do not offend some rule of law or contravene public policy. 29 American Jurisprudence, 172, § 157."
[2] It is further established by the great weight of authority that the insurer has the right to limit and restrict liability by the insertion of so-called war or military service clauses, and such provisions are not void on the ground that they are contrary to public policy. Indeed, no such contention is made in the case before us.
It is first necessary to determine if the provisions of limitation or restriction of liability in the policies under consideration is so worded as to be uncertain or unambiguous. If the provisions are couched in words which convey plain and certain meanings, and which are not susceptible of more than one interpretation, then there is no necessity for any attempt at construction by the courts.
In the instant case, consideration of the applicable provisions of the two policies convinces us that they are not worded with that certainty and freedom from ambiguity which admits of only one construction.
There can be no question but that an insurer could word a limitation or a refusal to cover described risks with such certainty as to remove the provision from any suspicion of ambiguity. Illustrations of this are found in the provisions which were under consideration by the courts in Coit v. Jefferson Standard Life Insurance Co., Cal.App., 161 P.2d 812, 813, where the provision limited liability if the death of the insured occurred "from any cause while the Insured is serving outside the states of the United States, the District of Columbia, and Dominion of Canada, in the military, naval or air forces of any country at war (declared or undeclared) * * *"; Bending v. Metropolitan Life Insurance Co., supra, where the insurance under the policy was suspended "while the insured is in the military or naval service in time of war"; Williams v. National Life Accident Insurance Co., 222 Mo. App. 355,1 S.W.2d 1034, 1037, where the policy provided "military or naval service in time of war is a risk not covered by this policy."
The inability of the courts, which have considered this matter, to fix a rule or establish a principle which might serve as a guide, is due to a lack of uniformity of the wording in the restrictive clauses in the policy contract of the several insurance companies. For this reason, a determination of each case must rest upon an interpretation of the particular policy involved.
The clauses embraced in the two policies of insurance, upon which this action is brought, and which are fully set forth hereinabove, differ in phraseology, but careful study convinces us that the purpose is the same. The clause in the first policy, so designated by reason of the time of issuance thereof, restricts the coverage set forth in the policy in the event of service in time of war to the net reserve on the policy, unless, however, a written permit be obtained from the company "for such service and an extra premium paid."
The clause contained in the second policy limits the liability thereunder to the reserve, or to one-fifth of the face amount, if the insured should die:
(a) while enrolled in military, naval or air service in time of war, whether declared or undeclared, or
(b) if the insured should die as the direct or indirect result of such service, unless a permit should be secured "signed by an executive officer of the company and paying such extra premium as the company may fix to cover the hazard." *Page 556 
[3] It is obvious that each of these provisions is uncertain and ambiguous, inasmuch as the wording does not definitely express the intention of the company as to whether the purpose of the limitation is directed at exempting all the hazards and risks attendant upon service in time of war, or only those which are the result of such service. The use of the word service in this connection, in our opinion, comprehends and includes the meaning implicit in such words as enrollment, enlistment, etc. Further, if for no other reason, the provisions are ambiguous in that they fail to fix either the conditions of a permit allowing service or the amount of the premium payable thereunder. The insured is entitled to a definite understanding as to the basis of any extra premium which he might be called upon to pay, particularly in view of the fact that the contract evidenced by the second policy was entered into at a time when millions of young Americans were being called into the service of this country. In considering this latter point the Supreme Court of Nebraska in Arendt v. North American Life Insurance Co., 107 Neb. 716, 187 N.W. 65, 72, commented as follows:
"As the application and the policy constitute the entire contract, such increased premium clause would certainly be not effective until notice and demand were made * * *. Again, as the increased premium was not fixed or determined, so far as this contract is concerned, there can be no basis of computation. The contract of insurance simply says that it shall not exceed 3 per cent. of the face of the policy. This is simply fixing the maximum but no determination of the exact amount."
The facts of the Arendt case show that the policy, as in this case, excluded protection in the event of military or naval service, except under written consent of the president of the insuring company, and the payment of a premium not exceeding 3 per cent. of the face of the policy.
The clauses under consideration herein are even more ambiguous than the provision in the cited case in that they do not fix even a maximum but leave the determination of the amount of the extra premium to the arbitrary will of the insurer.
[4] Having reached the conclusion that the provisions referred to are ambiguous and uncertain, it is within the province of the court to proceed to construe and interpret the provisions in a manner consistent with established principles of construction.
The many cases bearing on this question, broadly speaking, may be classed under one of three general groups:
First, those cases in which the wording of the policy has been interpreted as limiting the risk of the insurer because of the status of the insured. A limitation of this character amounts to no more than a limitation or refusal to cover the risk attendant upon one pursuing the occupation of service in the military or naval forces. In other words, the service of arms is a prohibited occupation within the terms of such policies, and it is not unusual for policies of insurance to enumerate particular classes of occupations in which an insured would not be covered. Under this group classification recovery has been denied, as in the case of Olson v. Grand Lodge, 1921,48 N.D. 285, 184 N.W. 7, 8, 15 A.L.R. 1270, where benefits under the policy were subject to forfeiture in the event the insured "should hereafter enter the occupation of a soldier in time of war." Also see Huntington v. Fraternal Reserve Association, 173 Wis. 582, 181 N.W. 819, 820, in which the certificate provided for limitation of the amount of benefit in the event the insured should become a "soldier in the regular army, in time of war" and "any claim accrues while insured is so occupied, whether resulting from such changed occupation or not, directly or indirectly, * * *"; and to the same effect is Miller v. Illinois Bankers Life Association, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378, where the policy contained this clause:
"It is expressly provided that death while in the service in the army or navy of the government in time of war is not a risk covered * * *."
Second, the group under which the limiting provision has been held as intending to protect the insurer against those instances where the cause of death was the result of the military service; in other words, where it was evident that the character of risk insured against was that which might be common to both civilian and militry life, and those risks which were peculiar to military life were intended to be excepted. Under this classification recovery has been denied in those instances where death resulted as a direct consequence of service; Marks v. Supreme Tribe of Ben Hur, 191 Ky. 385, 230 S.W. *Page 557 
540, 15 A.L.R. 1277, where the insured was killed in France; Railey v. United Life Accident Insurance Co.,26 Ga. App. 269, 106 S.E. 203, 15 A.L.R. 1281, where the insured was killed as a result of a ship collision in the north channel between Scotland and Ireland; and, in most instances, recovery has been allowed where death was not attributable to the hazards of service; Boatwright v. American Life Insurance Co., 191 Iowa 253, 180 N.W. 321, 11 A.L.R. 1085, involving death from influenza while in camp; Gorder v. Lincoln National Life Insurance Co., 49 N.D. 192, 180 N.W. 514, 11 A.L.R. 1080, where insured died of pneumonia which was epidemic among both civilian and military population; Myli v. American Life Insurance Co., 43 N.D. 495, 175 N.W. 631, 11 A.L.R. 1097, where death was caused by influenza and not by any extra hazard incident to military service.
Third, those cases in which the character of service was regarded as the determining factor in interpreting a restriction or exemption clause. It is true that this last classification shades into the second group, the line of demarcation between the classes being indistinct. But, for the most part, the class is made up of those cases necessitating interpretation of the words "engage in military or naval service", "in active military or naval service," or similarly worded phrases. By far the majority of the holdings under this class have permitted recovery under the theory that the words "engage in" connoted a contemplation of increased risk due to the hazard of active service. Illinois Bankers' Life Association v. Davaney, 102 Okla. 302, 226 P. 101; Barnett v. Merchants Life Insurance Co., 84 Okla. 42, 208 P. 271; Illinois Bankers Life Association v. Jackson, 88 Okla. 133, 211 P. 508; Benham v. American Central Life Insurance Co., 140 Ark. 612, 217 S.W. 462; Long v. St. Joseph Life Insurance Co., Mo.Sup., 248 S.W. 923; Johnson v. Mutual Life Insurance Co., of New York, 154 Ga. 653, 115 S.E. 14.
[5] It must first be borne in mind that the rule is universally recognized, particularly with regard to insurance policies, that any ambiguity in a contract made on a form prepared by one of the parties to the contract ought to be construed against him, as was said by Chief Justice O'Niell in his opinion in the case of Bernier v. Pacific Mutual Life Insurance Co. of California, 173 La. 1078, 139 So. 629, 88 A.L.R. 765.
Ambiguous clauses in contracts of insurance must be construed by the court in a light most favorable to the insured and against the insurance company, since the latter is the author of the contract. Kennedy v. Maryland Casualty Co., D.C.,26 F.2d 501; Womack v. Life Casualty Insurance Co. of Tennessee, La. App., 184 So. 357; Ardoin v. Great Southern Life Insurance Co., 186 La. 583, 173 So. 112.
This same rule was particularly emphasized in a case involving a question very similar in nature to the one before us, Schroeder v. Amalgamated Association of Street and Electric Railway Employees of America, 153 La. 27, 95 So. 389, 390. This case turned on the construction of the following clause:
"No death or disability claim shall be allowed or paid to a member, or any beneficiary of a member, whose death or disability has been caused while on duty as a soldier * * *."
This opinion, which was also written by Judge O'Niell, held that the provision, excluding liability for the death of a member while on duty as a soldier, was not applicable to a member who died while enlisted in the navy, especially where the hazardous occupation was not the cause of death.
While the provision in the above case differs from the ones under consideration, we feel the conclusion reached is indicative of the fact that while it might not be regarded as controlling authority, at least it may be considered as highly persuasive, and certainly in accord with the conclusion which we have reached in the instant case.
Earlier in this opinion we mentioned the fact that only one case, so far as we have been able to ascertain, has interpreted a policy provision like those under consideration. We refer to the case of Young v. Life Casualty Insurance Co. of Tennessee, decided by the Supreme Court of the State of South Carolina and reported in 204 S.C. 386, 29 S.E.2d 482, 483.
It is to be observed that the defendant in the cited case is the same as the one now before this court, and the provisions of the policy which were concerned therein read as follows:
"No Accidental Death Benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or *Page 558 
partially by disease, or by bodily or mental infirmity, nor if death results from bodily injuries sustained while participating in aviation or aeronautics as a passenger or otherwise, or while the insured is in military or naval service in time of war.
"Military and Naval Service — The insured may serve in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the Company for such service and an extra premium paid. Should the insured die while enrolled in such service in war time without such permit, the Company's liability will be restricted to the net reserve on this policy."
Reading of the opinion discloses the fact that the contention was made by the defendant that the insured did not obtain a written permit, did not pay an extra premium, and that his mere status as an enrolled member of the army of the United States in time of war was sufficient to bring the case within the exemption set forth. Death in the case referred to resulted from injuries sustained in an automobile accident, and admittedly had no causal connection with the military service of the decedent.
In a well considered opinion, the South Carolina Court held that the exemption provision was intended to limit liability only in the event of death resulting from a risk peculiar to the military service. The court rejected the contention that the use of the word "enrollment" contemplated establishment of mere status as the test of liability vel non on the part of the insurer, and cited in support of its position the Barnett v. Merchants Life Insurance Co., and Illinois Bankers Life Insurance Association v. Davaney cases, both cited above in this opinion, together with the case of Smith v. Sovereign Camp of the Woodmen of the World, 204 S.C. 193, 28 S.E.2d 808, 811, in which the military clause construed read as follows:
"The double indemnity benefits hereby provided shall not be payable * * * while the member is in the military or naval service in time of war."
In both the Smith and Young cases the court held that there must be causal connection between the accident and the military service in order to invoke the application of the clause limiting liability, and since the death of the insured occurred as the result of an automobile accident while on furlough, there was no such causal connection.
[6] We call attention to the fact that contention is also made on behalf of plaintiff in the case before us to the effect that the death of the insured, occurring at a time when he would have been on weekend liberty except for his illness, should be considered in the same light as the deaths of the insureds in the South Carolina cases referred to, which occurred on furlough. We see no merit in this contention, since, in our opinion, the case must be resolved upon a determination as to whether mere status or a causal connection between death and the incident of military service would serve to bring into effect the specific limitations involved herein. This question is not affected by any consideration of furlough or leave from duty, inasmuch as the facts conclusively show that the insured was not on leave. To speculate on the basis of a tenuous and strained contention as to what might have been would be fruitless.
[7] Examining the language of the clauses of limitation, we observe, with respect to the first policy, that military or naval service in time of peace, or for the purpose of maintaining order in case of riot, is specifically permitted. This being the case, how can it be successfully urged on behalf of defendant that status is to be considered as the test? We perceive no difference between the mere status of a soldier of the army in peacetime, particularly if serving to quell domestic riots, and that of a soldier in service in time of war. Occupation is obviously not designed to be the determining factor. This being so, what is the reasonable conclusion as to the intent? Would it not be the purpose on the part of the insurer to except from the risks assumed, not the ordinary, usual and customary duties of a soldier in service, but the extraordinary, unusual and dangerous hazards and risks of war? We feel that this is the only reasonable and tenable conclusion which could logically be reached.
[8] Now, with reference to the clause contained in the second policy, while it is true that the provision permitting military service in peacetime is omitted, it is still evident that military service even in time *Page 559 
of war might be permitted upon payment of an extra premium. And, by the very words of this provision, it is stipulated that such extra premium was designed "to cover the hazard."
We can only conclude from the wording to which we have directed attention that the insurer, while willing to assume the risk of loss arising from military service, was not willing to assume the added hazards and dangers of war except upon payment of an additional premium commensurate with the additional risk. To conclude otherwise would necessitate the assumption that the insurer intended to give no protection to its insured in consideration of the continued payment of the base premiums provided in the policies. Such an assumption is entirely unwarranted, for, certainly, the insurer in all good faith did not intend to make a distinction between the protection it afforded civilians under policies of insurance and the same character of protection which would be afforded the insured in military service from the same kind and nature of risks.
If the insured had died of pneumonia prior to his entry into military service, of course, there would be no question as to liability of the insurer under the policy. Why and where is there any distinction between the death of a civilian as the result of pneumonia, and the death, from pneumonia, of a soldier or a sailor in a camp or school, there being no question of exposure to the rigors of weather nor failure of proper attention which might occur on combat duty and thereby clearly be considered as a hazard of war?
To deny one in the naval or military service an equal amount of protection for the same premium payment as would be accorded one not in such service, in our opinion, would be discriminatory, and if we were convinced that such was the intent of the provisions of the policy, then we might be constrained to consider such a provision as being in contravention of sound public policy. However, as we have stated, we do not feel that this unjust and unequitable result was contemplated by the parties or either of them, and we therefore base our opinion upon the conclusion that the insured in the policies before us was accorded protection against ordinary risks, whether in or out of the military or naval service, but was excluded from protection in the event of that character of service in time of war which would expose him to the risks and dangers and hazards attendant thereupon.
Under the facts of the instant case there is nothing which would indicate any connection between the naval service of the insured and the cause of death. It must therefore follow that recovery of the full face value of the policies in question was properly allowed.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.
McINNIS, J., recused. *Page 630