This suit was instituted by plaintiff as the widow of the deceased insured and as beneficiary under one policy of life insurance and one policy providing for burial benefits, both issued by the defendant company. The policies were in force and effect at the time of the death of the insured, John D. Gipson, which occurred on the 17th day of June, 1945, and the only defense is the claim that the contracts of insurance included military service clauses restricting benefits payable thereunder.
The policy providing for burial and funeral service benefits in the principal sum of $300 contained the following clause: "Military and Naval Service. — The Insured may serve in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the Company for such service and extra premium paid. If, however, the Insured shall engage in military or naval service in time of war without securing a permit to be signed by the President or Secretary of the Company, then the liability of the Company shall be limited to one-half of the amount payable hereunder on the death of the Insured."
The policy of life insurance, in the principal sum of $210, contained an identical provision except for the limitation of liability, which was expressed in the following words: "— the liability of the Company shall be limited to the reserve of this Policy, or to one-fifth of the amount payable hereunder on the death of the insured, whichever amount is the greater."
A provision of the burial policy restricted the liability of the company to 60% of the principal amount if for any reason it should be impracticable for the company to actually furnish a burial service. It is conceded that this clause is applicable under the circumstances, and, accordingly, plaintiff seeks recovery of only 60% of the principal amount of $300, namely $180. Under the policy of life insurance plaintiff claims the full sum of $210.
Defendant tendered in open Court the sum of $132, together with costs accrued to date of tender. The sum tendered represented one-fifth of the face amount of the life policy and one-half of 60% of the face amount of the burial policy.
After trial there was judgment in favor of plaintiff in the amount of $132 and costs to the date of tender, from which judgment plaintiff brought this appeal.
The facts show that at the time of death decedent was enlisted in the service of the United States Navy and that he died at Port Hueneme, California, the cause of death being set forth in the certificate of the attending physician as "pulmonary embolus". It is further established that plaintiff entered the service of the United States Navy on May 8, 1944. The date of issuance of the burial policy is shown thereon as May 1, 1944, and the date of issuance of the policy of life insurance is shown thereon as June 5, 1944. It is therefore evident that the burial policy was issued only a few days prior to the entry of the decedent into service, and that at the time of the issuance of the policy of life insurance the insured was already in service. These facts are not changed by the applications of the insured which show that the application for burial insurance was dated April 22, 1944, and the application for life insurance was dated May 24, 1944, advance premiums on both being paid to the company's agent, one C.F. Powell, at the time of making application.
The facts in this case, for all practical purposes, are identical with the case of Edwards v. Life Casualty Insurance Company of Tennessee, La. App., 25 So.2d 552, which case was decided February 4, 1946, rehearing refused March 4, 1946. *Page 846 
The clauses providing limitations of liability were almost identical with those under consideration in the instant case.
In the Edwards case we stated the issue as follows: "Briefly stated, plaintiff's position is that there must be a causalconnection between the death of the insured and his militaryservice in order to bring into effect the limitation of liability contained in the above quoted provisions of the policies, while it is urged on behalf of defendant that these limitations became effective automatically, in accordance with the policy provisions, when the status of the insured as amember of the armed forces in time of war was established."
[1] After discussion of the issues stated, and the jurisprudence bearing upon the same, we reached the conclusion that the limitation clauses should be construed so as to protect the insurer against loss resulting from any causal connection between the death of the insured and his military service, but that the same should not be extended to such degree as would effect a limitation of liability simply by reason of the status of the insured as a member of the armed forces of the country in time of war. Upon the basis of this reasoning, recovery of the full face values of the policies involved in the cited case was allowed.
[2] For the reasons which are fully set forth in our opinion in the Edwards case, it necessarily follows that plaintiff is entitled to recover in the case before us. However, there are additional reasons in this case which serve to further strengthen and support plaintiff's claim.
At the time of application for life insurance the applicant was already in the service of the armed forces of the United States to the knowledge of the agent who accepted the application. While the local manager of the insurance company testified that he was not apprised of the fact that the applicant was in service, there is other evidence in the record which establishes the general policy of the company with regard to claims of this nature. The position of the company is set forth in a letter dated March 31, 1944, signed by T.B. Martin, President of the defendant company, and directed to the local manager at Natchitoches, as follows: "Replying to your letter of March 14th in reference to the war clause in our policy contracts, I beg to advise that in the past our Company has paid all claims in full where the policyholder lost his life while engaged in military service. However on all policies issued since December 7th, 1941, it is optional with our Company as to whether or not claims will be settled in full, or if they will be settled in accordance with the terms of the policy contract. The policy calls for 20% of the face value of the policy in the event the policyholder should lose his life while engaged in military service and this is all that we guarantee to pay on any policy issued since our country entered the war. On policies issued previous to December 7th, 1941 we are guaranteeing to pay these claims in full notwithstanding the fact that the policy contract only provides for 20%. Any policyholder who has a new policy with the Company should be glad to continue the policy in force even if he knew that the Company would pay only 20% of the face value of the policy as this would be a great deal more than the policyholder would have paid to the Company.
"So far as the policyholder paying an additional premium in order to receive the full face value of the policy, if this was done the premium would be so high that no policyholder would be willing to pay it. The premium would be about five times the regular premium charged on the policy. We have a regular letter which we got out soon after the war started, which we gave to any policyholder who requested such a letter, providing such policy was written previous to the war. I am sure we have sent you some of these letters and you are familiar with them. However, these letters are not to be given on policies that were issued since Dccember, 1941."
The "regular letter which we got out soon after the war started" unquestionably refers to an undated mimeographed form letter, which, however, was signed *Page 847 
by T.B. Martin, President of the company, introduced in evidence by the plaintiff, and which read as follows:
"Dear Policyholder:
In reference to the war clause in your First National Life Insurance Policy No. ___, I beg to advise that it will not be necessary for you to pay any additional premium on this policy at this time in order to receive the full face value of the policy in the event the insured should lose his life while engaged in military service.
It must be understood, however, that in the event a very large number of our policyholders should lose their lives while engaged in military service, our Company reserves the right to levy an additional premium in accordance with the terms of the policy contract, if we should find it necessary to do so to take care of the full face value of the policy on such claims. I am sure, however, that in view of the fact that our Company has a large surplus for the protection of our policyholders, that it will not be necessary for our Company to levy any additional premium in order to be in a financial position to pay the full face value of the policy on such claims. No one can tell at this time just how long the war may last and how serious it may be, and for this reason, we simply reserve the right to levy an additional premium in the event we should find it necessary to do so.
A number of our policyholders have lost their lives while engaged in military service and each of these claims have been paid in full and paid very promptly.
Under the circumstances mentioned above, I am sure that you will realize that it is to your best interest to keep your First National Life Insurance in force, and enjoy the protection which our company offers you.
I am,
Yours very truly,
T.B. Martin T.B. Martin, President".
The first letter on the point in question, which was dated December 23, 1941, read as follows:
"Mr. R. Guillory, District Manager First National Life Insurance Company, Natchitoches, Louisiana.
Dear sir:
Replying to your letters of December 8th, addressed to Mr. McFarland, secretary of our company, in reference to the war clause in our policy contract, I beg to advise that after giving this matter some serious consideration during the past ten days, our company has decided not to require any of our policyholders who are now in the service to pay any additional premiums on their policies for the time being.
If we should decide later on to require that an additional premium be paid, we will advise our managers accordingly and will take whatever steps may be necessary to have the policyholders pay whatever additional premiums we may deem necessary; but at the present time we do not feel that it would be proper to request our policyholders to pay any additional premium on their policies from the fact that it may not be necessary for them to do so. As long as our company is in a financial position to pay our claims in full, we are going to do so, and I believe that with the amount of capital and surplus which our company has at this time that we will be in a position to take care of all of our claims unless the war should become very, very serious. So any of your policyholders who may make inquiries in reference to the war clause in their policies, simply advise them to continue to pay the same premium on the policy which they have been paying; and in the event the insured should die or be killed, while in the service, our company will be glad to settle the claim in full, Of course, it must be understood that if the war should become very, very serious, and so many of our policyholders should get killed, and it should be necessary for our company to levy additional premium on the policies in order to keep the company in a sound condition financially, we will have the right to do so. But at the present time, I can see no good reason for our company requiring our policy-holders to pay any additional premium on their policies, notwithstanding the fact that *Page 848 
we have the right to do so. I am sure that our policyholders will appreciate our company's action in this matter and will hold on to their policies.
Yours very truly,
T.B. Martin T.B. Martin, President".
[3] An analysis of the three letters confirms our conclusion that the limiting clauses of the policies were regarded by the company itself as being intended to protect against the extra hazards of military service rather than against the simple status of the insured as a member of the armed forces. The use of the expression "should lose their lives while engaged in military service" clearly indicates the interpretation of death as resulting from and because of military service. One does not speak of an individual "losing his life" when he has died from natural causes, and the connotation implicit in the use of the phrase "engaged in military service" implies actual participation in combat, not death from natural causes at a point far removed from combat operations, as we pointed out in our opinion in the Edwards case, supra.
In view of these facts we feel that the instant case is much stronger in favor of plaintiff's contention than was the Edwards case.
[4] On the question of waiver, we feel that the general doctrine announced in Quinones v. Life Casualty Insurance Company of Tennessee, 209 La. 76, 24 So.2d 270, is determinative. The opinion of the Court in the cited case referred to Gitz Sash Factory v. Union Insurance Company,160 La. 381, 107 So. 232, 233, in which the Supreme Court held that acts of officers and agents of insurance companies, within the apparent scope of their powers, are binding on the company. Even disregarding the testimony to the effect that the district manager was cognizant of the fact that the applicant for life insurance was in service at the time of making application, the fact still remains that the agent who accepted the application knew this to be a fact, and, in view of the letters from the President of the company, which are fully set forth above, it is our opinion that he was within the apparent scope of his power in accepting the application. This being the case, the company would be estopped from denying liability under the policy of life insurance.
The clear purport of the letter of the President of the company, dated December 23, 1941, when construed with the undated form letter which was intended to be used for distribution to the policy-holders, to our minds is conclusive on the point that the company intended to pay all policyholders regardless of military service and without respect to the limitations contained in the policies, and without payment of any additional premium, so long as such action was possible. Never, at any time, did the company indicate that it expected strict compliance with the provisions of the limiting clauses. On the contrary, it was the purpose and policy of the company to make payments in full. This interpretation made by the company itself is entirely in line with the conclusions which we have reached, and, as we have stated, simply gives added weight to the contention made on behalf of plaintiff.
For the reasons assigned, the judgment appealed from is amended by increasing the judgment in favor of plaintiff to the sum of $390, with interest thereon at the rate of 5% per annum from date of judicial demand until paid, together with all costs of both Courts, and, as amended, the judgment is affirmed.