29 So.2d 50

**EDWARDS v. LIFE & CASUALTY INS. CO. OF TENNESSEE.**

No. 38179.

Dec. 13, 1946.

Rehearing Denied Dec. 31, 1946.

J. N. Marcantel, of Shreveport, and Claude W. Duke, of New Orleans, for defendant-relator.

Booth, Lockard & Jack, of Shreveport, for respondent.

FOURNET, Justice.

The Life and Casualty Insurance Company of Tennessee applied for and was granted a writ of certiorari to review the judgment of the Court of Appeal for the Second Circuit affirming a judgment of the lower court in favor of the beneficiary of two policies of insurance issued by it on the life of the late Robert Edwards, Jr., who, after he had enlisted in the naval forces during the last world war and while assigned to the United States Naval Training School (Radio) at the University of Colorado, Boulder, Colorado, for special instruction and training, contracted. pneumonia from which, after a brief illness, he died in the Sanitarium Hospital in Boulder. See, 25 So.2d 552.

It is the relator's contention that the court erred in affirming the lower court's judgment awarding the beneficiary the face value of these policies because in them is contained a clause specifically limiting the company's liability in the event of death of the insured while "enrolled in military, naval, or air service, in time of war," unless the insured secured a permit from the company and paid an extra premium to cover the additional hazard, if he desired to maintain the policy in full force while so enrolled, which he did not do in the instant case.

The first policy, issued on June 17, 1935, in the amount of $250, contains the provision, under the heading "Military and Naval Service," that "The insured may serve

in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the Company for such service and an extra premium paid. Should the insured die while enrolled in such service in war time without such permit, the Company's liability will be restricted to the net reserve of this policy." At the time this suit was instituted, the net reserve under this policy amounted to $50.

Under the same heading, in the second policy, issued on June 7, 1943, in the amount of $750, is contained the provision: "The liability of the company shall be limited to the reserve on this policy, or to one-fifth of the amount, payable hereunder on the death of the Insured, whichever is the greater, if the Insured should die while enrolled in military, naval, or air service in time of war, whether declared or undeclared; or if the Insured should die as the direct or indirect result of such service, without securing a permit signed by an executive officer of the Company, and paying such extra premium as the Company may fix to cover the hazard." A fifth of the face value of the policy, amounting to $150 at the time this suit was filed, was the greater amount in this instance.

Both of these policies contain an incontestable clause specifically exempting from incontestability the violation of the policy terms relative to service in the armed forces during time of war.

The Court of Appeal, in a well considered opinion, recognizing that it is the universal rule of law that policies of insurance are the contracts between the parties and that while all ambiguities must be construed in favor of the insured and against the insurer the courts have no authority to change or alter their terms, under the guise of interpretation, when they are couched in clear and unambiguous language, as well as the fact that according to the great weight of authority a provision in a policy limiting the liability or exempting the insurer from liability while the insured is engaged in the naval or military service is valid and not against public policy, concluded that the two policies "are not worded with that certainty and freedom from ambiguity which admits of only one construction," and that, therefore, it was "within the province of the court to proceed to construe and interpret the provisions in a manner consistent with established principles of construction." The court then very aptly pointed out that, broadly speaking, the many cases bearing on the question can be grouped in three divisions or categories, as follows:

"First, those cases in which the wording of the policy has been interpreted as limiting the risk of the insurer because of the status of the insured. A limitation of this character amounts to no more than a limitation or refusal to cover the risk attend-

ant upon one pursuing the occupation of service in the military or naval forces. In other words, the service of arms is a prohibited occupation within the terms of such policies, and it is not unusual for policies of insurance to enumerate particular classes of occupations in which an insured would not be covered. Under this group classification recovery has been denied, as in the case of Olsen v. Grand Lodge, [A. O. U. W. of North Dakota] 1921, 48 N.D. 285, 184 N.W. 7, 8, 15 A.L.R. 1270, where benefits under the policy were subject to forfeiture in the event the insured 'should hereafter enter the occupation of a soldier in time of war.' Also see Huntington v. Fraternal Reserve Ass'n [of Oshkosh,] 173 Wis. 582, 181 N.W. 819, 820, in which the certificate provided for limitation of the amount of benefit in the event the insured should become a 'soldier in the regular army, in time of war' and 'any claim accrues while insured is so occupied, whether resulting from such changed occupation or not, directly or indirectly, * * *'; and to the same effect is Miller v. Illinois Bankers Life Association, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378, where the policy contained this clause:

" 'It is expressly provided that death while in the service in the army or navy of the government in time of war is not a risk covered * * *.'

"Second, the group under which the limiting provision has been held as intending to protect the insurer against those instances where the *cause of death* was the *result* of the military service; in other words, where it was evident that the *character of risk* insured against was that which might be common to both civilian and military life, and those *risks* which were *peculiar to military life* were intended to be excepted. Under this classification recovery has been denied in those instances where death resulted as a direct consequence of service; Marks v. Supreme Tribe of Ben Hur, 191 Ky. 385, 230 S.W. 540, 15 A.L.R. 1277, where the insured was killed in France; Railey v. United Life & Accident Insurance Co., 26 Ga.App. 269, 106 S.E. 203, 15 A.L.R. 1281, where the insured was killed as a result of a ship collision in the north channel between Scotland and Ireland; and, in most instances, recovery has been allowed where death was not attributable to the hazards of service; Boatwright v. American Life Insurance Co., 191 Iowa 253, 180 N.W. 321, 11 A.L.R. 1085, involving death from influenza while in camp; Gorder v. Lincoln National Life Insurance Co., 49 N.D. 192, 180 N.W. 514, 11 A.L.R. 1080, where insured died of pneumonia which was epidemic among both civilian and military population; Myli v. American Life Insurance Co. [of Des Moines, Iowa,] 43 N.D. 495, 175 N.W. 631, 11 A.L.R. 1097, where death was caused by influenza and not by any extra hazard incident to military service.

"Third, those cases in which the character of service was regarded as the determining factor in interpreting a restriction

or exemption clause. It is true that this last classification shades into the second group, the line of demarcation between the classes being indistinct. But, for the most part, the class is made up of those cases necessitating interpretation of the words *'engage in military or naval service'*, *'in active military or naval service'*, or similarly worded phrases. By far the majority of the holdings under this class have permitted recovery under the theory that the words 'engage in' connoted a *contemplation* of *increased risk due to the hazard of active service*. Illinois Bankers' Life Association v. Davaney, 102 Okl. 302, 226 P. 101; Barnett v. Merchants Life Insurance Co., 87 Okl. 42, 208 P. 271; Illinois Bankers Life Association v. Jackson, 88 Okl. 133, 211 P. 508; Benham v. American Central Life Insurance Co., 140 Ark. 612, 217 S.W. 462; Long v. St. Joseph Life Insurance Co., Mo.Sup., 248 S.W. 923; Johnson v. Mutual Life Insurance Co. of New York, 154 Ga. 653, 115 S.E. 14."

A review of the many cases touching on this subject will show that each must be determined from its own particular facts and the intention of the parties, as reflected by their policy contract. An analysis of the clauses in controversy in the policies here under consideration leads us to conclude, as did the trial judge and the Court of Appeal, that there must be a causal connection between the death of the insured and his military service in order that the military clauses may be invoked, and that the deceased's mere status as a sailor was not the determining factor.

A mere reading of the clause in the first policy issued clearly supports this conclusion for in that policy the deceased was specifically permitted to engage in military service in peace time, including the maintenance of order in case of riot, and it was only in time of actual war that he was obligated to obtain a written permit and pay the extra premium. This was obviously to cover the additional hazard attendant upon the duties of warfare, otherwise there would be no reason or basis for charging this extra premium.

While the clause in the second policy issued does not specifically mention, as does the first, that the insured could serve in the military service or as a member of the National Guard in time of peace, it is still evident that such service was covered for it was only during the time of war that the insured was required to obtain a permit from the company and to pay an extra premium to be fixed by it "to cover the hazard." Of necessity this phrase must have been intended to cover the hazard attendant upon "such service," or those services incidental to warfare, otherwise it would have no meaning.

While the language in the contracts is not clear and unambiguous, we think a fair analysis thereof, particularly when the rule that all ambiguous clauses must be construed most favorably to the insured and against the insurer is invoked, will show

that the limitation placed in these contracts was intended to apply only when there was an added hazard and danger incident to warfare, a risk the company was willing to cover while the insured was enrolled in the military service for an extra premium to be taxed by the company upon the insured's application.

■ Under the facts of the case it appears there is nothing that would even remotely indicate any causal connection between the insured's death and the naval service in which he was enrolled at the time of his death and, in our opinion, his beneficiary is entitled to recover the full face value of the policies.

For the reasons assigned the judgment of the Court of Appeal for the Second Circuit is reinstated and affirmed, at relator's cost.

O'NIELL, C. J., concurs in the decree affirming the judgment complained of.