COVINGTON, Chief Judge.
The , plaintiff instituted this action against Aetna Life Insurance Company (Aetna) seeking benefits under an Aetna group life, accident and health insurance plan issued to the Trustee of the Manufacturing Industry Trust by Aetna Life Insurance Company bearing policy number GP-400101. The plaintiff was an employee of Woodyard Equipment and Supply Company, Inc. (WYESCO), a member of the Manufacturing Industry Trust and a policyholder of the Aetna plan. His now ex-wife, Ingeborg Humphrey, a covered dependent under the plan, was diagnosed as suffering from- temporomandibular joint syndrome (TMJ). ■ Aetna paid the maximum dental benefits of $1,000.00 under the plan. It denied any additional coverage for extensive crown and bridge work, performed in September, 1987, at a cost of $16,800.00, to treat Mrs. Humphrey’s TMJ problem. Specifically, Aetna asserted that under the *106 plan the $1,000.00 maximum dental coverage had been exhausted, and the remaining balance of the costs for the treatment did not arise due to an “injury ” as required for coverage under the major medical provisions of the plan.
The plaintiff brought this action, seeking recovery of benefits under Louisiana law, including claims for penalties and attorney’s fees. Aetna answered the petition, denying coverage under the terms and conditions of the plan and further asserting that the plaintiffs claims under Louisiana law are pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1001, et seq.
Aetna filed a motion for summary judgment, asserting that the plaintiff had not suffered an “injury” resulting in her tem-poromandibular joint dysfunction, and thus there was no additional coverage under the plan. The court denied the motion.
The matter came on for trial on May 26, 1989, and for oral reasons assigned, judgment was rendered in favor of the plaintiff and against Aetna Life Insurance Company in the sum of Fifteen Thousand Eight Hundred ($15,800.00) Dollars together with all legal interest and costs, and further awarding attorney’s fees in the amount of Two Thousand Five Hundred ($2,500.00) Dollars under 29 U.S.C. Section 1132, a portion of ERISA.
Although questions were raised concerning whether Aetna clarified or modified coverage by adding new language to the policy, as well as whether certain rights had “vested” under ERISA regulations, this case turns on a simple threshold question. Did the original policy language require “injury” to exceed the $1,000.00 dental maximum? If so, did such an injury occur? We believe there was an injury requirement to exceed the maximum dental payment of $1,000.00, and that no injury in fact occurred. Therefore, we reverse the judgment of the trial court as a matter of law. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989).
Under the 1986 Major Medical Benefit language, effective January 1, 1987, we find the following coverage:
Dental work, surgery and orthodontic treatment needed to remove, repair, replace, restore, or reposition natural teeth damaged, lost or removed or other body tissues of the mouth fractured or cut due to injury. The accident causing the injury must occur while the family member is covered under this benefit section. (Emphasis added).
Pretermitting the question of what Aet-na accomplished with the new language, it is obvious that the policy has an accident causing injury requirement to trigger the major medical benefit under the policy before the change in language. Also, because we decide this case based on the language of the policy, we do not reach the ERISA preemption concerns.
Appellee’s brief contains the following discussion of the policy language.
Aetna’s brief points to a definition of injury that is found at page 3200 of the master plan. However, such definition is inadequate and does not allow Aetna the escape it desires. The definition of “nonoccupational injury” that Aetna recites is merely taken from a place in the policy where the distinction is sought to be made between on-the-job injuries and off-the-job injuries. It does not, define the singular term “injury.”
On the other hand, the word injury as used in the Aetna policy ought to be used in its normal, common sense meaning. In Funk & Wagnall’s Standard Desk Dictionary, the word “injury” is defined as follows: 1. Harm, damage or grievous distress inflicted or suffered. 2. A particular instance of such harm.
It can not be disputed that Ingeborg Humphrey suffered harm, damage, and grievous distress as a result of her TMJ syndrome. Therefore, using the normal, everyday use of the term injury, she should not be excluded from coverage.
Aetna also asserts that the terms of its policy requires that the “injury” be “accidental.” However, even this does not provide them with their escape. Once *107 again, unless the term “accident” is defined in the policy, which it is not, one must look to the normal, everyday use of the definition of the word. The Funk & Wagnall’s Standard Desk Dictionary defines the word “accident” as follows: 1. Anything occurring unexpectedly, or without known cause. 2. Any unpleasant or unfortunate occurrence involving injury, loss, or death. 3. Chance; fortune. 4. Any non-essential attribute.
Aetna did not prove at trial that Mrs. Humphrey’s TMJ condition was not unexpected, or with known cause. In fact, the testimony of Dr. Atkins and Mr. Humphrey both indicate that no one knew how Mrs. Humphrey received this injury, thus it was “without known cause.” Furthermore, it can not be argued that Mrs. Humphrey intentionally brought this syndrome upon herself.
However, this contortion of the policy language would make impossible a distinction between on the job and off the job injuries. See Louisiana Civil Code Article 2049 which states:
A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.
This interpretation would require Aetna to be liable for benefits for every ailment known to man. Cancer, heart disease and other infirmities would trigger coverage as “injuries” because these conditions would cause “harm, damage or grievious distress.” Likewise, they would be “accidental” by plaintiffs definition because they would be “unfortunate occurrences causing loss.”
Dr. Floyd H. Humphrey, the treating dentist-gnathologist, testified that trauma was ruled out, that the patient told him that she had been slapped once by her father when she was a child. This cannot logically be related to an “injury” which now causes her problems.
The policy specifically states:
Not included are charges:
to remove, repair, replace, restore or reposition teeth lost or damaged in the course of biting or chewing; to repair, replace, or restore fillings, crowns, dentures or bridgework; for non-surgical periodontal treatment; for in-mouth sealing, planing or scraping; for myofunctional therapy which is muscle training therapy, or training to correct or control harmful habits; for in-mouth appliances, crowns, bridgework, dentures, tooth restorations, or any related fitting or adjustment services, except as provided for injury; whether or not the purpose of such services or supplies is to relieve pain; for root canal therapy or dental cleaning; for routine tooth removal (not needing cutting of bone), except as provided for injury. (Emphasis added).
In the ease of Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988), we find the following:
There are certain elementary legal principles which apply to the interpretation of insurance policies. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La.1979). If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111 (La.1953).
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225 (La.1979). If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. Albritton, 70 So.2d at 111. However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Monteleone v. American Emp. Ins. Co., 239 La. 773, 120 So.2d 70 (La.1960); Edwards v. Life & Cas. Ins. Co. of Tenn., 210 La. 1024, 29 So.2d 50 (La.1946).
*108 Applying these principles to the case at hand, the plaintiffs claim for benefits fails under the language of the policy. We therefore reverse the trial court. Costs are to be paid by appellee.
REVERSED and RENDERED.